[Civ. No. 1470. Second Appellate District.—February 25, 1914.]

## FRANK E. EAKER, Respondent, v. JOHN BRYANT, Appellant.

CONSTITUTIONAL LAW—REGULATION OF LOAN BROKERS—LIMITATION ON RATE OF INTEREST.—The act of 1909, as amended in 1911 (Stats. 1909, p. 969; 1911, p. 978), providing that every person engaged in the business of loaning or advancing money, and taking as security any chattel mortgage, bill of sale, assignment of wages, etc., is a personal property broker, and limiting the interest which he may charge to two per cent a month, but exempting persons who make occasional loans, or who loan upon pledge, or without security, or upon the security of bank books, bank deposits, interests in estates, contracts, or mortgages on real property. is not unconstitutional because in conflict with the requirement that all laws of a general nature shall have a uniform operation, or because it grants to some classes of citizens special privileges and immunities which upon the same terms are not granted to others, or because it conflicts with the provisions of the constitution of the United States prohibiting the various states from making or en-

forcing laws abridging the privileges or immunities of citizens and depriving persons of property without due process of law.

ID.—UNREASONABLE RATES OF INTEREST—INTERPRETATION OF STATUTES FORBIDDING.—Laws enacted to guard against unreasonable rates of interest are laws against oppression, and should be favorably regarded, as they always have been favored by the common law of England.

ID. — MONEY LOANING — STATUTORY REGULATION — CLASSIFICATION OF LENDERS.—When there comes into existence in a state a class of business, even though it be within a more general class, wherein it is customary and habitual for those conducting that business to charge excessive rates of interest and take mortgages upon the personal goods or assignments of the wages of the borrower as security therefor, the legislature may take cognizance of the fact that such business is in existence as a distinct occupation, and may set it apart as a business subject to regulation peculiar to itself, in order to avoid the wrongs incidental to such business when unregulated.

APPEAL from a judgment of the Superior Court of Los Angeles County.   Gavin W. Craig, Judge.

The facts are stated in the opinion of the court.

R. W. Clapp, for Appellant.

Charles S. Burnell, and Haas & Dunnigan, for Respondent.

CONREY, P. J.—In this action the plaintiff seeks to foreclose a chattel mortgage given to secure a note for the sum of three hundred and fifty dollars loaned by the plaintiff, a broker, to the defendant.  Judgment on the pleadings was entered as prayed for by the plaintiff, and the defendant appeals therefrom.

The note provides that defendant shall repay said sum of three hundred and fifty dollars in installments of fifty dollars each month; also pay interest "at the rate of three per cent per month from date until paid, interest payable monthly, and if not so paid to be compounded monthly from date due, and bear the same rate of interest as the principal."   There are various other stringent terms of note and mortgage which we need not repeat here.

The appellant claims that, since the note provides for interest at a rate greater than two per cent per month, the

transaction is one forbidden by the statute relating to personal property brokers. (Stats. 1909, p. 969, as amended in 1911; Stats. 1911, p. 978.) Respondent admits that the transaction was invalid if the above mentioned statute is constitutional. He contends, however, that said statute is unconstitutional and void: 1. Because it conflicts with the requirement that all laws of a general nature shall have a uniform operation (Const., art. I, sec. 11); 2. Because it grants to some classes of citizens special privileges and immunities which upon the same terms are not granted to other citizens (Const., art. I, sec. 21); and 3. Because it conflicts with the provisions of the constitution of the United States prohibiting the various states from making or enforcing laws abridging the privileges or immunities of citizens and depriving persons of property without due process of law (U. S. Const., amdt. XIV, sec. 1).

The portions of the statute here called in question are as follows:

"Section 1. That every person or corporation engaged in the business of loaning or advancing money or other thing and taking in whole or in part as security for such loan or advance any chattel mortgage, bill of sale, or other obligation or contract involving the forfeiture of rights in or to personal property, the use or possessison of which is retained by other than the mortgagee or lender, or engaged in the business of loaning or advancing money or other thing, and taking either in whole or in part as security therefor any lien on, assignment of or power of attorney relative to wages, salary, earnings, income or commissions, shall be held, and, for the uses and purposes of this act is hereby declared to be a personal property broker.

"Section 2. Such personal property broker may charge, receive and collect a benefit or percentage upon money or other thing advanced, or for the use and forbearance thereof, of two per centum per month where such loan or advance is made upon security properly falling within the scope of business as set forth in section 1 hereof.

"Section 3. No other or further charges either for recording, insuring or examining the security or property, or for the drawing, executing or filing of papers, or for any services or upon any pretext whatsoever beyond the aforesaid charge

for interest or discount shall be asked, charged, or in any way received, where the same would thereby make a greater charge for the money or thing advanced than the aforesaid rate of two per centum per month, and where made, all such charges shall be considered and be of the same effect as so much added interest; provided, however, that with the consent of the borrower he may be required to pay the fees or charges actually expended where the same are made necessary by law to give full legal effect to any instrument given hereunder.

"Section 4. No contract of any kind or nature made by any personal property broker which comes within the scope of business as set forth in section 1 hereof, or which in any way involves any security given to secure the performance of such contract, shall be valid, or of any force, virtue or effect, either at law or in equity, if there is therein or thereon directly or indirectly charged, accepted, or contracted to be received or paid, either in money, goods, discount, or thing in action, or in any other way, a greater benefit, rate of discount, or interest than the rate of two per centum per month; . . ."

This legislation has been preceded by other acts whereby the legislature attempted to limit the rates of interest and charges upon loans on chattel mortgage on certain personal property. (See Stats. 1905, p. 422, approved March 20, 1905.) This last mentioned act was the subject of attack before the supreme court upon the same grounds as those above stated, in *Ex parte Sohncke,* 148 Cal. 262, [113 Am. St. Rep. 236, 7 Ann. Cas. 475, 2 L. R. A. (N. S.) 813, 82 Pac. 956]. The act of March 20, 1905, attempted to limit to a rate of not more than one and one-half per cent per month the interest to be charged upon loans made upon chattel mortgages against certain specified classes of personal property; and prescribed also that certain incidental charges should not exceed five dollars "where the amount loaned does not exceed three hundred dollars." The supreme court determined in that case that the discriminations and classifications attempted in the statute there under review were purely arbitrary and not founded upon any natural, intrinsic, or constitutional distinction; that is to say, upon any distinction bearing a relation to or furnishing cause for the attempted classification. The court said that there was no substantial reason why those who lend money in sums not exceeding three hundred dollars on

certain specified kinds of personal property should be limited in their charges and the business they do in that respect made less profitable than it otherwise would be, while they or others who lend on chattel mortgages upon other classes of personal property which the law permits to be mortgaged, or who lend upon pledges of any kind of personal property, or who lend in sums exceeding three hundred dollars upon any kind of security, should be allowed to exact any rate of interest or other charge which they can obtain from the borrower. ''It is a part of the same kind of business, and there is no distinction between the particular classes of persons or things affected by the act and those exempted from its provisions that will justify special legislation. It may be that such exorbitant charges should be absolutely prohibited, but, if so, the prohibition should be made general, and should extend to all who engage in the business as lenders on the one hand, and should protect all who are made the victims thereof on the other hand, without discrimination in favor of any. There is a clear distinction between this case and the case of *Ex parte Lichtenstein,* 67 Cal. 359, [56 Am. Rep. 713, 7 Pac. 728], in which the court held valid a law regulating the business of licensed pawnbrokers. The business of pawnbroking is one well known to the law, and constitutes of itself a distinct class of persons and things which may be properly regulated by a law applying to them alone, as was clearly held in the decision in that case.''

The act of 1909, as amended in 1911, applies equally to all classes of personal property and to all loans regardless of the amount thereof. In these respects at least it is not subject to the objections which were sustained as against the former statute. But the respondent insists, nevertheless, that the statute attempts to pick out certain money lenders, to wit: those engaged in lending money and taking as security chattel mortgages, or bills of sale, or assignments of salary, etc., and to define such money lenders as personal property brokers, and to prescribe for them alone a maximum amount of interest which they may charge; and to impose upon them alone the burden of issuing tickets to borrowers, designating the nature of the security, etc. It is pointed out that the statute by its terms does not include loans upon pledge, or loans without security, or loans upon the security of bank books,

bank deposits, interests in estates, or contracts, or loans se-
cured by mortgage on real property. It is further suggested
that the act by its terms applies to "every person or corpora-
tion *engaged in the business* of loaning or advancing money,"
etc., and therefore does not include those who make occasional
loans, although not engaged in the business of making loans.

In its decision sustaining the law limiting the interest
charges of pawnbrokers, in *Ex parte Lichtenstein*, 67 Cal. 359,
[56 Am. Rep. 713, 7 Pac. 728], the supreme court said: "We
think the act in question may be sustained. It applies to all
persons in this state engaged in the business of licensed pawn-
brokers, and makes all persons engaged in that business amen-
able to its provisions. And if we look into the reason of the
law it is not without good and valid reasons to support it.
It is well known that persons frequenting the offices of pawn-
brokers are generally the reckless and needy and improvi-
dent, who require the protection of the law. To no other
class of money-lenders do the same reasons apply. Men
driven by the necessities of their situation resort to the pawn-
broker, and pledge any and all articles in their possession in
order to raise money, and they are not particular about the
rate of interest charged them. The pawnbroker also does a
business peculiar to himself. He always requires a deposit
as security for the amounts loaned, which are usually small,
and in that respect at least, his is a business not carried on by
any other person in the state."

The later statutes to which we have referred indicate that
the legislature has discovered other varieties of money-lend-
ing business, in addition to that of licensed pawnbrokers,
where advantage of the necessities of the needy and improvi-
dent is habitually taken. A man engaged in the business
which the statute here under review calls "personal property
broker," also "does a business peculiar to himself." We
find no difficulty in observing that there is a well-marked dis-
tinction between the transacting of certain business as a regu-
lar occupation and an isolated transaction of some item of
business within the ordinary scope of that occupation. (*Levin-
son* v. *Boas*, 150 Cal. 185, [11 Ann. Cas. 661, 12 L. R. A. (N. S.)
575, 88 Pac. 825].) Likewise there is as much difference be-
tween the business of a personal property broker and that of
one who lends money upon real estate security, as there is be-

tween the latter business and that of a pawnbroker.    In *Matter of Application of Miller,* 162 Cal. 687, [124 Pac. 427], questions were presented with reference to the validity of the act of March 22, 1911 (Stats. 1911, p. 437), forbidding the employment of women in certain establishments for more than eight hours in one day, etc.    Among other things, it was objected as against that statute that it made arbitrary discriminations between persons and classes of persons similarly situated. For instance, that it limited the number of hours of employment of women in hotels and restaurants, but did not attempt to apply such limitation to work in lodging houses and boarding houses.    Notwithstanding this difference, the validity of the act was sustained.    After stating the general rules defining uniformity of laws, as those rules are established by the decisions, the court pointed out the differences which exist, or reasonably may exist, between the burdens and conditions of employment of women in hotels as contrasted with boarding houses and lodging houses.    The court then said: "It is not unreasonable to suppose that those in the other places will be subject to less strain and tension than those who serve the more transient, varied, and indiscriminate guests of hotels, to whom they are generally entire strangers.    The legislature, in view of all the above facts, may reasonably have so determined.    In support of the law, as already stated, the courts are bound to presume that it did make this decision, and as there are sound reasons upon which it may rest, the decision must be accepted as correct.    The conditions stated appear to be a sufficient basis for the classification made.    In such matters the legislature cannot deal with individual cases. It can provide only for classes, and its decision as to the line of cleavage between classes in some particulars the same and in other particulars different must be upheld where it is based on any reasonable grounds.    We are of the opinion, therefore, that the law cannot be declared invalid because of this discrimination."

In like manner we reach the conclusion that the objections made by respondent to the present statute respecting personal property brokers are without merit.    Since the legislature has not included in the prohibitions of this act those persons who make loans without security, we may reasonably assume that the legislature has not found any abuse in that business re-

quiring public correction, if indeed it could find such business in existence at all. And since the lending of money upon the security of real estate, or of bank deposits, or of interests in estates, or of contracts, has not been included within the prohibitions of this statute, we may reasonably assume that the legislature has not found that the businesses pertaining to such loans are usually accompanied by the abuses which the legislature was seeking to remedy. The exclusion from this act, of the business of taking pledges as security for loans, is accounted for by the terms of the laws already in existence, controlling the business of pawnbrokers. (Pen. Code, sec. 338, et seq.; *Levinson* v. *Boas,* 150 Cal. 185, [11 Ann. Cas. 661, 12 L. R. A. (N. S.) 575, 88 Pac. 825].)

Laws enacted to guard against unreasonable rates of interest are laws against oppression, and should be favorably regarded, as they always have been favored by the common law of England. When there comes into existence in a state a class of business (even though it be within a more general class) wherein it is customary and habitual for those conducting that business to charge excessive rates of interest and take mortgages upon the personal goods, or assignments of the wages of the borrower as security therefor, the legislature may take cognizance of the fact that such business is in existence as a distinct occupation, and may set it apart as a business subject to regulation peculiar to itself, in order to avoid the wrongs incidental to such business when unregulated. Such legislation, as instanced in the present case, is not arbitrary. It is based upon differences which in some reasonable degree, as said in the Miller case, "will account for or justify the peculiar legislation."

The contract in this case being within the description of business defined in the statute, and providing for a rate of interest in excess of two per cent per month, is not "of any force, virtue or effect, either at law or in equity," and the plaintiff has no cause of action thereon.

The judgment is reversed.

James, J., and Shaw, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on April 25, 1914.