[Crim. No. 4276.   In Bank.—April 26, 1940.]

In the Matter of the Application of ROLAND A. FULLER for a Writ of Habeas Corpus.

Alfred Jay Luke for Petitioner.

A. D. Schaffer and Anthony Podesta, as *Amici Curiae,* on Behalf of Petitioner.

Marshall Hickson, City Attorney (San Marina), for Respondent.

Earl Warren, Attorney-General, Thomas Coakley, Deputy Attorney-General, A. S. Montague, Meserve, Mumper & Hughes, Ray L. Herndon, Ralph E. Hoyt, District Attorney (Alameda County), J. F. Coakley, Chief Assistant District Attorney, Cecil Mosbacher and Stanley C. Smallwood, Deputies District Attorney, Cross & Brandt, Christopher M. Bradley and Alex Sherriffs, as *Amici Curiae,* on Behalf of Respondent.

EDMONDS, J.—The constitutionality of legislation known as The Small Loan Act (Stats. 1939, chaps. 953 and 1045) is challenged by the petitioner in this proceeding. He alleges that he has been arrested and detained for violations of these statutes, which were passed at approximately the same time and are substantially identical, and seeks his release upon a writ of *habeas corpus*.

According to the petitioner, as a broker he negotiated an unsecured loan of $50 in return for a fee of $2.50, and as a lender he made an unsecured loan of his own money in the amount of $50 at a rate of interest of 8 per cent per annum without any additional charges. Both transactions are alleged to have been entered into by him in the regular course of his business, and without his having applied for or obtained either the broker's or the lender's license required by the statutes which are now in effect because, as he asserts, these laws impinge upon the due process, equal protection, and privileges and immunities clauses of the federal Constitution and corresponding provisions of the California Constitution.

The legislation under attack expresses the purpose of the State of California to supervise the small loan business. Each of the statutes includes regulations with which lenders and brokers making or negotiating loans of $300 or less are required to comply. Such regulations may validly be imposed if they constitute a reasonable exertion of governmental authority for the public good. If there is a proper legislative purpose, a law enacted to carry out that purpose, if not arbitrary nor discriminatory, must be upheld by the courts. (*Wholesale Tobacco Dealers' Bureau, etc.*, v. *National Candy & Tobacco Co.*, 11 Cal. (2d) 634 [83 Pac. (2d) 3, 118 A. L. R. 486]; *Max Factor & Co.* v. *Kunsman*, 5 Cal. (2d) 446 [55 Pac. (2d) 177]; *Nebbia* v. *New York*, 291 U. S. 502 [54 Sup. Ct. 505, 78 L. Ed. 940, 89 A. L. R. 1469].)

It is a matter of common knowledge that persons who have no banking credit and require small loans to pay debts, meet taxes, or provide funds for emergency needs, have always found difficulty in obtaining money unless they paid a very high interest rate, amounting, in many cases, to oppression. Such borrowers are often ignorant and usually in

immediate need. They are, therefore, likely to be willing, and in fact are often forced by their unfortunate circumstances, to accept whatever terms the lenders may ask. Reported decisions show rates exacted from needy borrowers ranging as high as 1300 per cent. (*Tennessee Finance Co. v. Thompson*, 278 Fed. 597 [260 per cent]; *Cotton v. Cooper*, (Tex. Civ. App.) 160 S. W. 597 [360 per cent]; *State v. Hurlburt*, 82 Conn. 232 [72 Atl. 1079] [650 per cent]; *Willson v. Fisher*, 75 Misc. 382 [135 N. Y. Supp. 532] [1300 per cent].) California conditions are graphically set forth in a recent report to the legislature. (Assembly Interim Committee Report on Investigation of Small Loans, Journal of the Assembly, 1935, volume 1, page 1297.)

The first real start toward legislation to curb the operations of persons making small loans was commenced by the Russell Sage Foundation, which in 1907 undertook to make a scientific study of the problem. In 1916 it issued the first draft of a Uniform Small Loan Law. Six successive drafts have been made, the latest, designated as the Seventh Draft, having been issued recently. The California legislation of 1939, so far as to most of its basic features are concerned, is patterned after the Sixth Draft which was published in 1935. Forty-one states have now recognized the necessity for protecting borrowers of small amounts from imposition and extortion. Of this number 36, including California, have laws substantially similar to one of the drafts of the Uniform Small Loan Law.

Prior to 1905, the legislature of California had laid restriction only upon pawnbrokers. The constitutionality of that act, passed in 1861, was sustained in the case of *Jackson v. Shawl*, 29 Cal. 267, and later in *Ex parte Lichtenstein*, 67 Cal. 359 [7 Pac. 728, 56 Am. Rep. 713]. These decisions, in effect, hold that the pawnbroking business is properly subject to regulation under the police power and that legislation directed solely against it is not based upon an unreasonable classification.

In 1909 the legislature enacted the Personal Property Brokers' Act (Stats. 1909, p. 969) which defined personal property brokers as those lending money on the security of personal property or wage assignments, and prohibited such persons from charging over 5 per cent per month. Later this amount was reduced 2 per cent. It also required lenders

to furnish borrowers with a complete statement of the loan terms and made a violation of the act a crime. These provisions are typical of similar laws enacted in other states. As amended (Stats. 1911, p. 978), the legislation was fully sustained against constitutional objection in *Eaker* v. *Bryant*, 24 Cal. App. 87 [140 Pac. 310], and *In re Stephan*, 170 Cal. 48 [148 Pac. 196, Ann. Cas. 1916E, 617]. In each of these cases the maximum charge provision and also the classification of personal property brokers as the sole object of legislation was specifically and unqualifiedly upheld.

In 1918, by an initiative measure known as the Usury Law, the people of this state limited the total amount which a lender may receive as profit on a loan to a stated maximum and also curtailed the charges and expenses of loan brokers. (Stats. 1919, p. lxxxiii.) However, this court held that it does not restrict the lender's right to charge for certain services rendered by him. (*Wallace* v. *Zinman*, 200 Cal. 585 [254 Pac. 946, 62 A. L. R. 1341].) The legislation enacted by the people was followed by the Personal Property Brokers' Act (Stats. 1931, p. 558) which required those engaged in the business of procuring such loans for borrowers to secure a license and restricted the charges which might be made for them by allowing a maximum interest rate of $3\frac{1}{2}$ per cent per month upon secured loans of $300 or less. The licensing provisions of this act were upheld in the case of *In re Halck*, 215 Cal. 500 [11 Pac. (2d) 389], although the interest rate provisions were later held to be invalid because in conflict with the Usury Law, *supra*. (*Beneficial Loan Soc., Ltd.*, v. *Haight*, 215 Cal. 506 [11 Pac. (2d) 857].)

Later the constitutional objections sustained by this court were removed by an amendment to the Constitution adopted in 1934 (art. XX, sec. 22), which specifically exempts personal property brokers from the operation of the Usury Law and gives the legislature power to prescribe methods of regulation and rates. This power was exercised by the enactment of the laws now under attack which provide that ''no person shall engage in the business of making or negotiating, for himself, or another, loans of money, credit, goods, or things in action, in an amount or of the value of three hundred dollars or less, without first obtaining a license from the Commissioner of Corporations'' and that ''No licensee . . . shall make any loan of three hundred dollars, or less, and con-

tract or receive thereon interest at a rate exceeding 10 per centum per annum computed on the unpaid balance of the loan, which said interest shall not be paid, deducted or received in advance nor compounded.'' (Stats. 1939, chap. 953, secs. 4 and 16; chap. 1045, secs. 4 and 16.) These statutes also provide for the supervision and examination of the business carried on by persons making such loans.

The small loan business is one which under present economic conditions fulfills the need of many people who require a small amount of money to tide them over times of temporary distress. Unquestionably it cannot be subjected to unreasonable regulation. However, a lawful occupation may be regulated for the protection of the public but the degree of such regulation must be commensurate with the evils to be remedied. One of the most common means of regulation is a requirement that persons engaging in a business must obtain a license so to do, and such a requirement has been uniformly upheld when based upon a reasonable classification.

Thus the Supreme Court of the United States, in upholding a statute requiring the licensing of those engaged in private banking, stated that '' . . . the power of the State to make the pursuit of a calling dependent upon obtaining a license is well established, where safety seems to require it, and what we have said before sufficiently indicates that this calling is one to which the requirement may be attached''. (*Engel* v. *O'Malley*, 219 U. S. 128, 137 [31 Sup. Ct. 190, 55 L. Ed. 128].) Also in *LaTourette* v. *McMaster*, 248 U. S. 465 [39 Sup. Ct. 160, 63 L. Ed. 362], the court pointed out that insurance is affected with a public interest, and those engaged in procuring it for the public may be required to secure a license. Such a requirement has also been upheld in California. (*In re Weisberg*, 215 Cal. 624 [12 Pac. (2d) 446]; *Riley* v. *Chambers*, 181 Cal. 589 [185 Pac. 855, 8 A. L. R. 418]; *In re Bickerstaff*, 70 Cal. 35 [11 Pac. 393]; *Aaroe* v. *Crosby*, 48 Cal. App. 422 [192 Pac. 97].)

The second count of the complaint charges the violation of the Small Loan Act in that Fuller, as a broker engaged in the business of negotiating loans to be made by a lender, charged an amount in excess of $2\frac{1}{2}$ per cent per month on the unpaid principal balance of a loan of fifty dollars. This brings him within the provisions of the act

which prohibit an interest charge of more than 10 per cent per annum, and also denies a licensee the right to "contract for or receive any service or expense charges beyond the actual outlay" and limits the aggregate amount of such interest and charges to 2½ per cent per month on loans of less than $100 and 2 per cent on any remainder of an unpaid balance of principal in excess of that amount. As against this charge of the complaint, the petitioner contends that the provisions of the act restricting the amounts which a lender may collect are unconstitutional and void.

The principal contention of the petitioner in this regard is that the Usury Law, *supra*, and the 1934 amendment to the Constitution operate as a prohibition upon the power of the legislature to enact the statute he is charged with violating. More specifically, he claims that the Small Loan Act is invalid because in conflict with the Usury Law.

However, an analysis of the earlier legislation shows conclusively that the petitioner's claims are entirely unfounded. The title of the Usury Law, *supra*, describes it as an act "relating to the rate of interest which may be charged", providing penalties for violations, and repealing acts and parts of acts in conflict therewith. In section 1 of the act, the legal "rate of interest" is fixed at $7 per $100 per annum, but a "rate of interest" not exceeding $12 per $100 per annum may be agreed upon. The following section prohibits anyone from directly or indirectly taking or receiving any greater sum for a loan than at the rate of $12 per $100 per annum, forbids the compounding of interest, and finally declares any agreements in conflict with its provisions shall be void as to any agreement therein contained "to pay interest" and no action "to recover interest in any sum" shall be maintained and the debt cannot be declared due until the full contract period has elapsed.

Other provisions authorize the recovery of treble the amount of interest paid in excess of that allowed by the act, and also make it a misdemeanor to exact more than 5 per cent on sums under $1,000 and 3 per cent on sums over $1,000, in full for all fees, appraisals, and other enumerated charges.

Both the title of the act and its first section refer to "the rate of interest" which may be charged, and speak of interest alone. Section 2 does not, at the outset, refer to "interest" but to "receiving in money, goods or things in action,

or in any other manner whatsoever, any greater sum or any greater value . . . than at the rate of twelve dollars upon one hundred dollars for one year''. But in the following sentence, the People declared that any agreement to pay interest ''in conflict with the provisions of this section'' shall be null and void. Very probably, the use of the words ''money, goods or things in action, or in any other manner whatsoever'', were intended to forestall any possible claim on the part of lenders that the receipt of merchandise or considerations other than money, would not constitute a payment of ''interest'' within the meaning of the act. Otherwise the words would be meaningless and in direct conflict with the title, which refers only to ''interest'', and to section 1 of the act where the same maximum amount allowable is referred to as ''interest''. Accordingly, there is no possible justification for the claim made by petitioner that section 2 of the Usury Law refers to anything other than ''interest''.

It is true that the latter portion of section 3 of the Usury Law, *supra,* specifically refers to charges other than interest and purports to limit the amount of such charges. These provisions were, however, held unconstitutional in the case of *Wallace* v. *Zinman, supra,* and if the People in adopting the Usury Law intended to limit certain charges other than interest, they did not succeed in so doing. It operates only as a limitation upon the ''interest'' which may be charged by the lender, and does not exclude, regulate, or limit other charges which may be made in connection with a loan transaction. (*Haines* v. *Commercial Mtg. Co.,* 200 Cal. 609 [254 Pac. 956, 255 Pac. 805, 53 A. L. R. 725]; *Wallace* v. *Zinman, supra.*)

These deficiencies in the Usury Law left a large field for the operation of unscrupulous persons who, operating as brokers, could impose whatever charges they saw fit. Unquestionably the practices which developed led the legislature of 1931 to amend the Personal Property Brokers Act, *supra,* so as to limit the total charges which could be imposed on loans of $300 or less to 3½ per cent per month, and to require all persons engaged in such business to be licensed. The rate provisions of this act were held unconstitutional because in conflict with the 1918 initiative Usury Law, but the court limited its decision in the following signifi-

434

cant language: ''We are not intending to hold that the Usury Law prevents a classification, as made by the act, of brokers according to the amount involved and the nature of the security taken. . . . Nor are we intending to hold that a statute which allows the legal rate fixed by the Usury Law and yet limits the service or expense charges to the actual outlay, and not to exceed a definite limit, would be in conflict with other provisions of the Usury Act. The Usury Law does not purport to fix or limit the legitimate expense or service charge that may properly be borne by the borrower''. (*Beneficial Loan Soc., Ltd.,* v. *Haight, supra,* at p. 517.)

This construction of the Usury Law recognizes and applies the general rule that the word ''interest'', while broad enough to cover ''bonus'', ''commission'', or any other form of ''compensation'' paid to the lender for the use of money, does not include brokerage or other compensation paid to a third person, or expense items such as appraisals, recording fees, insurance, or similar charges. Such charges are proper subjects of regulation, and, unquestionably, one purpose of the Small Loan Act was to limit the amounts which may be exacted therefor. The legislation to accomplish this does not conflict in any manner with the Usury Law, which restricts legislative action only as to interest and still leaves the legislature supreme in all other fields of loan regulation.

The effect of the constitutional amendment of 1934 upon the Usury Law was to reduce the maximum permissible interest rate from 12 per cent to 10 per cent, but not to otherwise affect its requirements as to those classes. of lenders which were specifically exempted from that regulation. (*Penziner* v. *West Coast Finance Co.,* 10 Cal. (2d) 160 [74 Pac. (2d) 252].) As to the exempted groups, the legislature was reinvested with the same control over them as it had prior to the enactment of the Usury Law.

But, says petitioner, the Small Loan Act authorizes greater charges than permitted by the Usury Law and the constitutional amendment. This contention is entirely untenable. The act limits interest to the 10 per cent maximum fixed by the Usury Law, and the term ''interest'' includes all amounts received by the lender under any other name as compensation for his own services, with the sole exception of amounts received for legitimate items of expense. Such items

are not covered by the Usury Law, and in the absence of other legislation would be unlimited. The Small Loan Act simply limits the amount which borrowers may be charged for such items.

Petitioner also claims that the act is unconstitutional since it deprives a lender of the right to collect legal costs authorized by the Usury Law. Agreement with this contention would require a construction that the failure of the Usury Law to limit charges was intended as a prohibition against any limitation being imposed upon charges. The decision of this court in *Beneficial Loan Soc., Ltd.,* v. *Haight, supra,* is a complete answer to this assertion.

Another of petitioner's points is that the penalty provisions of the Small Loan Act conflict with the Usury Law, since they render void contracts for interest and charges made in violation of the act, whereas the penalties of the Usury Law apply only where excessive interest has been actually paid and received. But the penalty provision of the Usury Law voids the interest whether collected or not, while that of the Small Loan Act voids "interest and charges". Since "charges" are not affected by the Usury Law and the legislature still retains full authority and control over "charges", a provision that charges made in violation of its requirements shall be void cannot be construed as a violation of the Usury Law, which applies only to interest.

The petitioner also complains that the act discriminates between lenders charging different rates of interest because the maximum limitation on the aggregate amounts which can be charged borrowers does not take into consideration variations in interest charges. He claims that because of this fact the act does not limit "charges" which can be imposed upon borrowers, as these will vary according to the rate of interest charged, and that therefore the provision with reference to the maximum amounts which can be charged borrowers is indefinite and uncertain and allows an arbitrary charge.

To dispose of this contention it is only necessary to point out that the act does not permit or authorize a variation in the "charges" but specifically limits them to "actual outlays", and that any variation in total charges imposed upon borrowers would result only where the "actual outlays" amounted to less than the interest actually charged and the

maximum total which could be charged such borrowers under the act. That this might occur as the result of a voluntary reduction in the rate of interest charged by the lender from the maximum allowed is, of course, obvious, but absolutely immaterial.

Petitioner's claim that the act permits interest in excess of the constitutional limitation is based upon the provision that a month shall be any period of thirty consecutive days, from which he argues that twelve months would be three hundred sixty days; that 10 per cent for three hundred sixty days is greater than 10 per cent for three hundred sixty-five days, as required by the Constitution; and that the rate provision is therefore void as allowing a greater rate of interest than allowed by the Constitution. This argument is completely answered by the law's provisions.

The first paragraph of section 16 of the act pertains to "interest", and limits interest to "10 per cent per annum", which is the same limitation fixed by the Constitution. The second paragraph limits "charges" which may be imposed in addition to interest, and provides that the aggregate total of interest and charges shall not exceed $2\frac{1}{2}$ per cent per month on the first $100 of any loan and 2 per cent per month on the remainder of such loan. This percentage could, of course, have been fixed at any figure which the legislature deemed advisable, since, as heretofore pointed out, this operates simply as a limitation upon the amount of "charges" which can be collected in addition to the interest.

The thirty-day month provision contained in the third paragraph expressly applies to "charges and interest", so obviously is intended to refer to the basis for computing the $2\frac{1}{2}$ per cent and 2 per cent aggregate charges. There is no legal reason why the legislature, if it saw fit to do so, could not have made these percentages, for example, 3 per cent and $2\frac{1}{2}$ per cent, instead of $2\frac{1}{2}$ per cent and 2 per cent. Its requirement that such charges be computed on the basis of a three hundred sixty day year instead of a three hundred sixty-five day year is, therefore, not in conflict with the constitutional provision.

It is apparently petitioner's contention that the Small Loan Act is violative of the due process and equal protection of law provisions of the federal and state Constitutions because it does not uniformly apply to all classes of lenders

but creates an unjustifiable and unreasonable classification thereof through (a) application only to the so-called unsecured or non-exempt group of loan operators, (b) application only to loans of $300 or less, and (c) exemption of real estate loans. This contention is without merit.

The basic doctrine underlying the entire field of classification, and with particular reference to the loan business itself, is well expressed in *Borden's Farm Products Co., Inc.*, v. *Baldwin*, 293 U. S. 194 [55 Sup. Ct. 187, 79 L. Ed. 281], where the court said: ''When the classification made by the legislature is called into question, if any state of facts reasonably can be conceived that would sustain it, there is a presumption of the existence of that state of facts, and one who assails the classification must carry the burden of showing by a resort to common knowledge or other matters which may be judicially noticed, or to other legitimate proof, that the action is arbitrary''. The same principle has also been recognized in this state in decisions upholding legislation such as that here attacked. (*Eaker* v. *Bryant*, 24 Cal. App. 87 [140 Pac. 310]; *In re Stephan*, 170 Cal. 48 [148 Pac. 196, Ann. Cas. 1916E, 617]; *Ex parte Lichtenstein*, 67 Cal. 359 [7 Pac. 728, 56 Am. Rep. 713].)

The Small Loan Act expressly exempts from its operation, banks, trust companies, building and loan associations, industrial loan companies, credit unions, licensed pawnbrokers, non-profit agricultural cooperatives, corporations loaning money pursuant to the Agricultural Credits Act of 1923, *bona fide* conditional contracts of sale involving disposition of personal property when not used for the purpose of evading the act, licensed personal property brokers when transacting the business authorized by such act, and licensed real estate brokers when transacting the business authorized by such act. *Bona fide* sales made on conditional contracts of sale do not constitute loans of money, and such transactions would not fall within the scope of an act applying to loans. Real estate brokers are subject to the regulation of the real estate commissioner, and the exemption of such brokers applies only when they are transacting business authorized by the Real Estate Act. The legislature may reasonably have determined that regulation of such brokers under the Real Estate Act is a sufficient safeguard against improper practices on their part in connection with small real estate loans, or

that no abuses existed in the case of real estate loans which required any remedy.

Banks, trust companies, building and loan associations, industrial loan companies and credit unions are all created by special laws and are subject to inspection, supervision and control, which justify their exemption from other forms of regulation. The exemption of licensed pawnbrokers is justified for the same reason, and also because legislation regulating them has been consistently upheld as proper classification. (*Ex parte Lichtenstein, supra.*) The same principles are applicable to the exemption of licensed personal property brokers, since legislation applicable to them alone has been upheld as reasonable and proper classification. (*Eaker* v. *Bryant, supra; In re Stephan, supra.*) Moreover, their exemption is not absolute, but applies only to transactions subject to the Personal Property Brokers Act.

Non-profit agricultural cooperatives, and corporations lending money pursuant to the Agricultural Credits Act of 1923 clearly engage in a limited field of business. As to the first group, it is hardly to be expected that non-profit cooperatives would indulge in "loan shark" practices. Accordingly, as this court said in *Eaker* v. *Bryant, supra,* "we may reasonably assume that the legislature has not found any abuse in that business requiring public correction". The same statement may properly be made as to the remaining group of corporations lending money pursuant to the Agricultural Credits Act of 1923. Also, their operations are subject to the regulation and control of the Farm Credit Administration, which is another reason why they may properly be exempted.

This leaves for consideration the question whether legislation applicable only to loans of $300 or less may be upheld. There is no doubt about the answer.

The propriety and reasonableness of a classification of the loan business, based on size of individual transactions, has been approved in practically all cases where the matter has been questioned. (*In re Halck, supra; Koen* v. *State,* 162 Tenn. 573 [39 S. W. (2d) 283].) Nor does such legislation conflict with any provision of the federal Constitution. (*Engel* v. *O'Malley,* 219 U. S. 128 [31 Sup. Ct. 190, 55 L. Ed. 128].) Size of transactions is not always an index of the evil to be remedied, but may well provide the basis of classification where the legislature is endeavoring to protect those

who borrow small amounts against the rapacity of those who would prey upon ignorance or credulity.

Other assaults upon the act are many and varied, leaving unchallenged practically nothing but the punctuation. Those which have not been discussed are either included within the points passed upon or are so inconsequential as not to merit recognition.

The writ is denied and the petitioner remanded to custody.

Curtis, J., Shenk, J., Gibson, J., and Waste, C. J., concurred.

Mr. Justice Carter deeming himself disqualified did not participate in the foregoing decision.