PEOPLE, *ex rel* ATTORNEY GENERAL, v FAIRFAX FAMILY
FUND, INC.

1. LICENSES—SMALL LOAN BUSINESSES—CORPORATIONS—FOREIGN COR-
   PORATIONS—CONSTITUTIONAL LAW—INTERSTATE COMMERCE—
   STATUTES.

   A foreign corporation conducting a loan-by-mail business with
   residents of Michigan is not required to obtain a license in the
   manner provided by the statutes regulating small loan busi-
   nesses where the corporation is involved solely in interstate
   commerce, where the corporation is in compliance with the
   regulatory loan law of another state, and where licensing
   would result in a complete compulsory domestication of the
   corporation (MCLA 493.1 *et seq.*).

2. CONSTITUTIONAL LAW—INTERSTATE COMMERCE—CORPORATIONS—
   FOREIGN CORPORATIONS—LOANS BY MAIL.

   A corporation conducting a loan-by-mail business in this state is
   involved solely in interstate commerce where the corporation
   solicits loans only by mail, is not admitted to do business in the
   state, owns no property in the state, maintains no employees in
   the state, executes no agreements in the state, and where
   default collections are made by a wholly independent collection
   agency.

3. LICENSES—SMALL LOAN BUSINESSES—CONSTRUCTION—OUT-OF-STATE
   COMPANIES—STATUTES.

   The phrase "except that loans made by mail to Michigan resi-
   dents shall be subject to the provisions of this act", in an act
   regulating small loan businesses, does not require the general
   licensing of out-of-state small loan companies.

4. CONSTITUTIONAL LAW—STATUTES—CONSTRUCTION.

   A statute shall be construed as constitutional if such a result can
   be reached.

REFERENCES FOR POINTS IN HEADNOTES
[1–3] 51 Am Jur 2d, Licences and Permits §§ 22, 23.
[4] 16 Am Jur 2d, Constitutional Law §§ 2–4.

Appeal from Ingham, Ray C. Hotchkiss, J. Submitted Division 2 June 7, 1974, at Lansing. (Docket No. 19149.) Decided August 28, 1974.

Complaint in *quo warranto* by the Attorney General against Fairfax Family Fund, Inc., and Spiegel, Inc., to enjoin the defendants from transacting business in Michigan without complying with licensing statutes. Judgment for defendants. Plaintiff appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Sally Lee Foley, J. Ronald Kaplansky,* and *Edwin M. Bladen,* Assistants Attorney General, for the plaintiff.

*Hillman, Baxter & Hammond* (by *Robert N. Hammond* and *Joel M. Boyden),* for the defendants.

Before: McGregor, P. J., and R. B. Burns and O'Hara,* JJ.

O'Hara, J. The State of Michigan has an act which was amended by 1971 PA 168, effective March 30, 1972.[1] The act concerns the licensing and regulation of the small loan business.

It is a long and detailed statute. It provides for specified places of business in the nature of physical structures in Michigan,[2] the amount of reserve to be maintained at each,[3] the nature of the assets required,[4] and the rate of interest to the charged.[5]

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

[1] MCLA 493.1 *et seq;* MSA 23.667(1) *et seq.*

[2] This follows by reasonable implication from a reading of MCLA 493.2; MSA 23.667(2); MCLA 493.4; MSA 23.667(4); MCLA 493.7; MSA 23.667(7); MCLA 493.12; MSA 23.667(12).

[3] MCLA 493.2; MSA 23.667(2).

[4] MCLA 493.2, *supra* fn 3.

[5] MCLA 493.13; MSA 23.667(13).

It requires a pre-licensure investigation[6] and a fee of $150 to finance it.[7] It requires annual licensing at a fee of $250.[8] It may very well be that it is a perfectly valid exercise of the police power in Michigan over persons or corporations domiciled in Michigan, a question we are not called upon to decide.

Defendants have for sometime been conducting a loan by mail business with residents of Michigan. Defendant Fairfax Family Fund is a Kentucky corporation and is a totally owned subsidiary of defendant Spiegel which is a Delaware corporation. Fairfax does all the loaning to Michigan residents whose business it solicits only by mail. It is not admitted to do business in this state. It owns no property here. It maintains no employees here. The loan agreements are executed in Kentucky. On default, collection in Michigan is attempted by a wholly independent collection agency.

They are, defendants contend, involved solely in interstate commerce and thus protected by the commerce clause of the Federal constitution.[9]

We agree. Even under the minimum contacts doctrine and the rigorous test of *International Shoe Co v Washington,* 326 US 310; 66 S Ct 154; 90 L Ed 95 (1945), defendants here under the record made do nothing except transact loan business by mail. Fairfax does not, as did International Shoe Company, have salesmen in the state; no samples were exhibited nor orders taken. In fact, no contacts with Michigan residents of any kind were had except by United States mail. It should

[6] MCLA 493.4; MSA 23.667(4).
[7] MCLA 493.2, *supra* fn 3.
[8] MCLA 493.2, *supra* fn 3.
[9] US Const, art 1, § 8.

be noted that the interest rate charged on the loans was substantially higher than permitted by the Michigan statute.

This aspect of the case is moot because defendants have conceded on the record and in their briefs that they are subject to the interest rate provisions of the Michigan act.[10] Presently they are complying with its provisions.

This left only the one question for the trial judge and the parties so stipulated. Can Michigan require defendants to obtain a license in the manner required by the act in order to continue their loan by mail business? The Attorney General says they must because of the following language in § 18 of the act: "except that loans made by mail to Michigan residents shall be subject to the provisions of this act".[11] His position is that this proviso amended the whole act to bring defendants within its terms with the consequent need to fulfill all of the licensing requirements thereof.

Not so, said the trial judge.

"It appears that this phrase ['except that loans made by mail to Michigan residents shall be subject to the provisions of this act'.] was added by the Legislature, for the limited purpose of concerning itself with the amount of interest which can be charged by lenders not licensed within the State of Michigan, and to the enforceability within Michigan of loans made by lenders not licensed within the state. The proviso in Section 18 relates only to the interest which may be charged and collected by persons who are licensed outside the State of Michigan, with respect to loans made by mail to Michigan residents. The Court has reached this conclusion through a careful examination of the entire act. To make the alleged licensing requirement clear and explicit would have been very easy for there are other

[10] MCLA 493.13, *supra* fn 5.
[11] MCLA 493.18; MSA 23.667(18).

sections in the act particularly devoted to the matter of licensing. It is only logical and reasonable for the Legislature to have included therein an explicit provision governing licensing of foreign lenders if its intention had been such. Leaving the licensing requirement to an implication to be drawn from an exception to a proviso in a section of the act dealing only with interest charges gives this Court the opinion that the Legislature had no intention of having this proviso govern the general licensing of out of state small loan companies or persons who are licensed under a similar regulatory loan law of another state or country."

The trial judge further noted that the act also includes the language "provided that the foregoing shall not apply to loans legally made in any state or country by a licensee under an existing regulatory loan law similar in principle to this act". As to this proviso he held:

"It is undisputed that the defendant, Fairfax Family Fund, Inc., is licensed under the Kentucky Petty Loan Companies Law and an examination of the Kentucky statutes, KRS 288.410 *et seq.*, reveals that it is basically similar to that of the State of Michigan, 1939 PA 21, as amended by 1971 PA 168.

"No other language in the act would appear to require the licensing of out of state lenders and since the defendant, Fairfax Family Fund, Inc., is in compliance with an existing regulatory loan law similar to the State of Michigan's as it must be in order to avoid the necessity of obtaining a license from the State of Michigan, this cause of action in *quo warranto* must be and is hereby dismissed."

We are in agreement with both conclusions. They are hereby affirmed.

Because of the position of the Attorney General and the possibility of further review of this case by our Supreme Court, and possibly the United States Supreme Court, we feel obligated to add that mere

non-discriminatory licensure by this state is not proscribed by the commerce clause. In a case involving the same defendants and the State of California a licensing requirement was imposed.[12] The California court held:

"The Small Loan Law of California is legislation designed for the public welfare. It is primarily to protect the citizens of this state from fraudulent and unconscionable conduct of those in the lending business *(In re Fuller,* 15 Cal 2d 425; 102 P2d 321 [1940]), and, as such, is a matter of local concern. Californians who deal or negotiate with, or obligate themselves to, appellant should have the same protection as afforded to Californians who deal with local small loan concerns. There is no question of discrimination in this case in that the statutes in question apply to both interstate and intrastate lending agencies alike. There is no barrier erected by the statutes in question to stop an interstate concern from doing its business in California. The licensing is not designed to protect local companies from outside competition. The purpose of the legislation is to protect the members of the public in California from the lenders who would otherwise take advantage of them. The degree of regulation contained in the laws of this state with reference to loan sharks is not disproportionate to the evils which exist if the lenders are left to their own devices without licensing and without any regulation by the state. The charges or expenses imposed by the licensing procedure are no larger in amount than is reasonably necessary to defray the administrative expenses involved and could not in any event be classed as being discriminatory or imposing undue restrictions on interstate commerce. The investigation which is made upon the filing of an application for a license is, on its face, designed to ascertain facts which are necessary and proper under the circumstances." *People v Fairfax Family Fund,* 235 Cal App 2d 881, 883–884; 47 Cal Rptr 812, 814 (1964).[13]

---

[12] Technically the California action was brought against Fairfax alone and did not name the parent corporation, Spiegel, as a party thereto.

[13] Appeal to the United States Supreme Court dismissed for lack of

We are in complete accord with the quoted excerpt, but our examination of the California statutes reveal many differences that render that decision inapposite to the case at bar. We are obligated to construe a statute as constitutional if such a result can be reached. 16 Am Jur 2d, Constitutional Law, § 146, pp 350–352. See also *State Highway Commission v Mobarak,* 49 Mich App 115; 211 NW2d 539 (1973). We must conclude that were the construction urged by the Attorney General adopted it would result in a complete compulsory domestication of defendants. Reasonable licensure is one thing. Domestication is quite another.

If § 18 were administratively construed to require only the payment of the $150 initial investigation fee and the $250 annual license fee called for in the act neither would constitute an unreasonable burden on interstate commerce and could be non-discriminatorily enforced.

According to what is designated as "Exhibit B" an application for a license was made and the requisite fees tendered. The administering agency, the Department of Commerce, rejected the application and returned the fees. We quote from the department's letter:

"It is the administrative construction * * * that such act requires a license * * * with this license based on a finding of convenience and advantage to the community to be served.
" * * * [T]he application * * * cannot be accepted."

Such construction presents some practical problems, to say the least, to a company which is

a substantial Federal question, 382 US 1; 86 S Ct 34; 15 L Ed 2d 6 (1965).

located in no Michigan community and conducts its entire operation by mail.

Great is the power of the sovereignty but it does not extend to this degree of regulation of interstate commerce, to say nothing of limiting the use of the United States mail.

For the reasons herein specified the trial judge is affirmed.

No costs, a public question.

All concurred.