[L. A. No. 20936. In Bank. June 28, 1949.]

BUDGET FINANCE PLAN (a Corporation), Respondent, v. LAWRENCE GAMSON et al., Appellants.

William Katz for Appellants.

Mindlin & Levy and L. J. Styskal for Respondent.

SHENK, J.—In April, 1946, the plaintiff corporation, a licensed personal property broker, loaned $20,000 to the defendants, Lawrence Gamson and his wife Gertrude, at charges of 1½ per cent per month on the unpaid principal balances, taking as security a chattel mortgage on two automobiles and certain household furnishings, and in addition, a deed of trust on a parcel of real property. At the same time the defendants delivered a promissory note to the plaintiff which provided for repayment of the loan in 48 successive monthly installments of $600 each. When the defendants defaulted in several payments after paying a total sum of $4,800 the plaintiff, in accordance with a provision in the promissory note, declared the entire unpaid balance immediately due and payable, or in lieu of payment, demanded possession of the personal property covered by the mortgage. The defendants refused to pay or comply with the demand and this action to gain possession of the mortgaged personal property was thereupon commenced. By cross-complaint the defendants sought an injunction to restrain the plaintiff from exercising the power of sale contained in the deed of trust and from foreclosing the chattel mortgage, and a money judgment for treble the sum paid by the defendants to the plaintiff as interest on the loan. Relief on the cross-complaint was denied and judgment was entered for the plaintiff for possession of the personal property or $5,000 as the value thereof.

On this appeal by the defendants it is contended that the note, deed of trust and chattel mortgage are void on the ground that the loan violated usury provisions found in the Constitution (art. XX, § 22 as amend. 1934), and the Per-

sonal Property Brokers Act [Stats. 1909, p. 969; 2 Deering's Gen. Laws, Act 5825] by reason of the fact that a part of the security consisted of a lien on real property. In 1945, the Personal Property Brokers Act was amended and section 4(d) enacted (Stats. 1945, p. 2321) which undertook to permit personal property brokers to take liens on real estate as security for loans of $5,000 or more. The defendants' contention is a challenge of the power of the Legislature to effect such an amendment.

The contention of the defendants rests in the main on an interpretation of the term "duly licensed personal property broker" as used in the 1934 amendment to the Constitution which exempted that class of lenders (as well as other named classes of business lenders) from the general interest limitations therein established. Specifically, the 1934 amendment fixed the legal rate of interest at 7 per cent per annum and authorized parties to provide by written contract for a rate not exceeding 10 per cent. However, duly licensed personal property brokers were exempted from the general interest limitations and the Legislature was empowered to establish rates of interest and charges such lenders can receive, which might be more or less than the general 10 per cent rate. (Const., art. XX, § 22; *Carter* v. *Seaboard Finance Co.,* 33 Cal.2d 564 [203 P.2d 758].) No definition of a personal property broker appeared in the constitutional amendment, but both plaintiff and defendants agree, and their agreement finds support in established principles of construction, that as used in the 1934 constitutional provision, the term referred to the class of lenders which was defined only in the Personal Property Brokers Act of 1933, in effect in 1934, which declared: "Sec. 2.(2) The term 'personal property broker, as used in this act, includes all who are engaged in the business of lending money and taking in the name of the lender, or in any other name, in whole or in part, as security for such loan, any contract or obligation involving the forfeiture of rights in or to personal property, the use and possession of which property is retained by other than the mortgagee or lender, or all who are engaged in the business of lending money and taking in the name of the lender, or in any other name, in whole or in part as security for such loan, any lien on, assignment of, or power of attorney relative to wages, salary, earnings, income or commission." (Stats. 1933, p.

1496.) This is substantially the same definition as that found in the original Personal Property Brokers Act of 1909* and is identical with the definition found in the present act. (Stats. 1939, pp. 2667, 2874.)

It is claimed by the defendants that only lenders who take liens on personal property exclusively are embraced by the definition. Therefore, they reason, the exemption from the general interest limit which is accorded duly licensed personal property brokers by the 1934 amendment to the Constitution is limited to lenders taking personal property or wage assignments as security, and may not be enlarged by the Legislature so as to grant the special exemption to lenders who take real property security. (See *Pasadena University* v. *Los Angeles County,* 190 Cal. 786 [214 P. 868].) Such an enlargement, it is argued, would amount to an amendment of the Constitution which may be accomplished only by vote of the people. (Const., art. XVIII, § 1.)

The statute to which the defendants object as being in excess of legislative authority and on which the plaintiff relied in making the loan here involved developed as follows: Prior to 1939 there had been no express statutory prohibition against the taking of real property security by personal property brokers. In that year there was included in the Personal Property Brokers Act a provision that "No licensee shall take a lien upon real estate as security for any loan made under this act, except such lien as is created by law upon the recording of an abstract of judgment." (Stats. 1939, § 16, par. 4, pp. 2667, 2874.) An amendment to the act in 1945 declared that that provision (as well as other enumerated restrictive provisions) "shall not apply to any bona fide loan of a principal amount of $5,000 or more, or to a duly licensed personal property broker in connection with any such loan, provided the provisions of this paragraph are not used for the purpose of evading this act." (Stats. 1945, § 4(d), p. 2321.)

---

*"Section 1. That every person or corporation engaged in the business of loaning or advancing money or other thing and taking in whole or in part as security for such loan or advance any chattel mortgage, bill of sale or other obligation or contract involving the forfeiture of rights in or to personal property, the use or possession of which is retained by other than the mortgagee or lender, or engaged in the business of loaning or advancing money or other thing, and taking either in whole or in part as security therefore any lien on, assignment of or power of attorney relative to wages, salary, earnings, income or commissions, shall be held, and, for the uses and purposes of this act, is hereby declared and defined to be a personal property broker." (Stats. 1909, p. 969.)

█ The basic assumption in the defendants' argument that the definition of personal property broker found in the 1933 Personal Property Brokers Act which was incorporated in the 1934 constitutional amendment, limited that class of lenders to those who take only personal property security or wage assignments is shown to be unfounded by an examination of the wording of the definition and the circumstances which existed at the time of its adoption. In 1909, when the term was first defined by statute no general usury law was in effect. With the exception of pawnbrokers who had been regulated since 1861 lenders and borrowers could "agree in writing for payment of any rate of interest." (Civ. Code, § 1918.) Usurious practices flourished during that period in California as elsewhere throughout the United States, and especially where loans were made to needy borrowers on the security of household furniture and other personal property or wages. (Hubachek, Annotations on Small Loan Laws (1935), pp. 1, 92.) To curb abuses with respect to all loans where such security was taken, the 1909 Personal Property Brokers Act fixed a 5 per cent per month limit on charges (in 1911 reduced to 2 per cent) of those defined in the act as personal property brokers. All who "engaged in the business of loaning or advancing money . . . and taking in whole or in part, as security for such loan" liens on personal property or wage assignments were no longer free to exact unlimited charges. The use of the phrase "in whole or in part" indicates plainly that the Legislature intended to subject to the restrictions of the act not only lenders whose security consisted entirely of liens on personal property or wage assignments, but also those whose loans were only partly so secured, and it made no difference whether the loans were also secured by real property liens.

An interpretation of the meaning of the definition in the 1909 act favorable to the claim of the defendants is not warranted by the decisions in *Eaker* v. *Bryant*, 24 Cal.App. 87 [140 P. 310], and *In re Stephan*, 170 Cal. 48 [148 P. 196, Ann.Cas. 1916E 617], which sustained the basis of classification in the 1909 act as amended in 1911. Each of those cases decided that persons making loans in whole or in part on the security of personal property could be subjected to statutory prohibitions as to interest rates in view of the abuses which the Legislature was seeking to remedy. The further question of whether personal property brokers might take additional

security in the form of real estate liens, a type of security at which the regulatory statute was not directed, was not raised.

In the years since 1909 personal property brokers have been affected by numerous changes in loan laws. The historical development of these laws has been discussed in *Carter* v. *Seaboard Finance Co., supra,* 33 Cal.App. 564, and *In re Fuller,* 15 Cal.2d 425 [102 P.2d 321]. The rate provisions of the first Personal Property Brokers Act as amended in 1911 and again in 1931 were found to conflict with the maximum rate established for all lenders by the initiative usury law of 1919 (Stats. 1919, p. lxxxiii) and were invalidated (*Beneficial Loan Society, Ltd.* v. *Haight,* 215 Cal. 506 [11 P.2d 857]); since 1931 brokers have been required to be licensed and to be subject to the regulations and supervision of the Commissioner of Corporations (Stats. 1931, p. 558); in 1909 personal property brokers were limited as to the interest and charges they could make while other lenders were unregulated, but they may now charge more than other lenders generally upon compliance with licensing and regulatory provisions. (Stats. 1939, pp. 2667, 2874.) Despite these and other changes, the original definition which did not preclude personal property brokers from taking as partial security liens on real property, has not substantially changed. Therefore in 1934 when the amendment to the Constitution was adopted, they were not prohibited from taking such security. It was within the regulatory power of the Legislature to prevent brokers from taking real property security as was done in 1939. It follows from what has been said that the Legislature could in 1945 reinstate the right to take liens on real estate as security.

But it is argued by the defendants that if personal property brokers are permitted to take real estate liens, the very basis upon which the classification and regulation of personal property brokers has in the past been sustained as reasonable would be removed and constitutional provisions prohibiting discriminatory legislation would be violated. (Const., art. I, §§ 21 and 11.) It is claimed that the only justification for permitting personal property brokers to exact greater charges than nonbusiness lenders, by means of an exemption to the general usury provision of the Constitution, is that the business of lending on the security of personal property is unique. *Eaker* v. *Bryant, supra,* 24 Cal.App. 87, the first decision sustaining the classification is cited. In that case it was said at page 92: "A man in the business which the statute

here under review calls 'personal property broker,' also 'does a business peculiar to himself' . . . Likewise there is as much difference between the business of a personal property broker and that of one who lends money upon real estate security, as there is between the latter business and that of a pawnbroker.'' We are asked to hold the 1945 amendment invalid for the reason that if effective the classification would lose its distinctiveness. We are then urged to declare the loan here involved void by virtue of section 21 of the Personal Property Brokers Act which declares contracts in violation of the act void and states that licensees shall not have the right in such cases to collect any principal, interest or charges whatsoever. (Stats. 1939, § 21, pp. 2667.)

The characteristics peculiar to the business of lending on the security of personal property or wages do not disappear merely because loans of $5,000 or more by personal property brokers may also be secured by real estate. Furthermore the useful and reasonable purpose served by the segregation of this class of lenders remains unaffected. Under the Constitution the regulation of personal property brokers has been committed to the Legislature. All members of this class, irrespective of the size of loans made by them, must obtain a license; all are subjected to certain regulatory features of the Personal Property Brokers Act; all must submit to supervision by the Commissioner of Corporations. In 1945, the Legislature determined that certain restrictive features of the act, including the prohibition against holding real estate liens as security, should be removed as to loans of $5,000 or more. The Legislature might reasonably conclude that real estate security is more appropriate to loans of $5,000 or more. However, the 1945 amendment is not to be construed as permitting those holding personal property brokers' licenses to lend solely on the security of real property liens, for so construed it might cause the classification of personal property broker to lose its distinctiveness. When read in conjunction with the definition to which we have referred, the 1945 amendment is found to be an authorization to licensees to take real estate security in part when making loans of $5,000 or more so long as the good faith requirements of the statute are satisfied.

Further arguments of the defendants claiming that the loan was usurious and demanding treble the interest paid because of violations of the 1919 usury law, are premised on the erroneous supposition that the Legislature could not

permit personal property brokers to take any real property security and do not require discussion.

The judgment is affirmed.

Gibson, C. J., Edmonds, J., Traynor, J., Schauer, J., and Spence, J., concurred.

CARTER, J.—I dissent.

The majority opinion cannot stand for two reasons: (1) It permits the Legislature by the 1945 amendment to the Personal Property Brokers Act to enlarge the meaning of the term "personal property broker" beyond the scope thereof as used in the 1934 amendment to the Constitution (Cal. Const., art. XX, § 22). (2) The classification permitting such brokers to charge interest on real estate loans in excess of that others may charge is unreasonable and without a rational basis.

It is conceded in the majority opinion that the exemption of personal property brokers from the 10 per cent maximum interest rate by the 1934 constitutional amendment is governed by the *then existing definition of a personal property broker,* inasmuch as the Constitution did not define "personal property brokers." The law at that time described such persons as those lending money and taking as security therefor *personal property.* We must consider that definition in the light of the court decisions on the subject. In *Matter of Application of Stephan,* 170 Cal. 48 [148 P. 196, Ann.Cas. 1916E 617], the court upheld the classification of personal property brokers but did so on the ground that the security was *personal property,* the court stating, page 51: "But we think it must now be conceded that in the course of the development of modern civilization the business of *loaning money on chattel mortgages,* or like instruments, and that of loaning or advancing money on assignments or other transfers of wages, earnings, and the like, as well, have become so well known and so capable of classification and recognition that the legislature is entirely justified in describing them as a peculiar class and giving them the name of personal property brokers. Their business is as distinct in many respects from other classes of business as is that of a pawnbroker. Nor can it be denied that abuses have grown up in connection therewith which the legislature might well deem to call for the regulations imposed by this law." Likewise, in *Eaker* v. *Bryant,* 24 Cal.App. 87 [140 P. 310], the court

considered the old personal property brokers act and referred to exemptions therein of real estate mortgage security, stating: "This legislation has been preceded by other acts whereby the legislature attempted to limit the rates of interest and charges upon loans on *chattel mortgage on certain personal property* . . .

"The act of 1909, as amended in 1911, applies equally to all classes of *personal property* and to all loans regardless of the amount thereof. In these respects at least it is not subject to the objections which were sustained as against the former statute. But the respondent insists, nevertheless, that the statute attempts to pick out *certain money lenders,* to wit: those engaged in lending money and taking as security *chattel mortgages,* or bills of sale, or assignments of salary, etc., and to define such money lenders as personal property brokers, and to prescribe for them alone a maximum amount of interest which they may charge; and to impose upon them alone the burden of issuing tickets to borrowers, designating the nature of the security, etc. It is pointed out that the *statute* by its terms *does not include loans* upon pledge, or loans without security, or loans upon the security of bank books, bank deposits, interests in estates, or contracts, or loans *secured by mortgage on real property* . . .

*"Likewise there is as much difference between the business of a personal property broker and that of one who lends money upon real estate security,* as there is between the latter business and that of a pawnbroker. . . .

" . . . *And since the lending of money upon security of real estate,* or of bank deposits, or of interests in estates, or of contracts, *has not been included within the prohibitions of this statute,* we may reasonably assume that the legislature has not found that the businesses pertaining to such loans are usually accompanied by the abuses which the legislature was seeking to remedy." [Emphasis added.] That is a square holding that loans on realty are not included in the old Personal Property Brokers Act. Precisely the same propositions were declared very recently by this court in *Carter* v. *Seaboard Finance Co.,* 33 Cal.2d 564, 576 [203 P.2d 758], where it is said: " . . . the Legislature in 1909 (Stats. 1909, p. 969, 2 Deering's Gen. Laws, Act 5825) attempted *to regulate the business of making small loans secured by personal property.* This was the first Personal Property Brokers Act. That statute defined a personal property broker as one engaged

in the business of loaning money on the security of *personal property* . . .

"The classification of personal property brokers as a distinct class has consistently been upheld by California courts as justified by the unique problems of that class. [Citing cases.] The Assembly Interim Committee, whose report has been referred to, in 1935 recommended that the classification be retained in future legislation, setting forth the special problems met with in connection with personal property brokers, and stated: 'In the sense that *personal property is used as security, it is distinguished from real property by being movable, destructible, difficult to record as to property rights therein,* susceptible of abuse as to rights of third persons, and not subject to a period of redemption after foreclosure. These differences make personal property less valuable as security both to the borrower and to lender; *special regulations are required to overcome these difficulties.* Borrowers on personal property are subject to temptations in respect to its treatment after a lien is created, and lenders are tempted to abuses after default. This *type of security* and the fact that its possession is left with the borrower present problems of regulation peculiar to the class.' " [Emphasis added.] Moreover, the very name itself—"personal property brokers," indicates that lenders on the security of realty are not included.

It is no answer to say that a personal property broker may take land as security as long as he also takes personalty, because the distinction between such loans then becomes absolutely meaningless and we have a clear discrimination. A broker could take any nominal article or chattel and have realty as the only real security of any value. Thus, although ostensibly in the personal property security loan business, he is in effect in the real property security loan business. Hence, we have nothing left of the distinction between the two, which brings us to the discrimination feature. This discrimination is evidenced by the illustration I pointed out in my dissent in *Carter* v. *Seaboard Finance Co., supra.* The only basis for distinguishing between loans on personalty and realty is that the latter are more safe and less expensive to handle and therefore the *interest rate may be less.* But here the majority say that the interest rate may be *without limit* when the lender has *more security*—realty, in addition to the personalty. In other words, he gets the safety and economy of a realty loan, yet because he received additional collateral, he should not be

limited in his interest charges. If that is a reasonable basis for a legislative classification, so would the proposition that strong men may carry concealed weapons for their own protection but the weak may not, for the bigger they are the harder they fall. The money lender may be entitled to his "pound of flesh," but he should be required to take it lawfully, and I do not believe that there are any considerations of justice or public policy which justify this court in placing a strained construction upon the plain language of the Constitution in order to permit the money lender to continue to exact more than the traffic can bear. This is what the majority decision accomplishes in this case.

I would, therefore, reverse the judgment.