[Civ. No. 31391. Second Dist., Div. Three. Aug. 1, 1968.]

NORRIS F. RIEBE, Plaintiff, Cross-defendant and Appellant v. BUDGET FINANCIAL CORPORATION, Defendant, Cross-complainant and Respondent.

[Civ. No. 31392. Second Dist., Div. Three. Aug. 1, 1968.]

MOODY-McCLOUD, INC. et al., Plaintiffs, Cross-defendants and Appellants, v. BUDGET FINANCIAL CORPORATION, Defendant, Cross-complainant and Respondent.

(Consolidated Appeals.)

577

578

Joseph R. Laird for Plaintiffs, Cross-defendants and Appellants.

David M. Turner for Defendant, Cross-complainant and Respondent.

MOSS, J.—Plaintiffs appeal from judgments on the pleadings rendered in favor of defendant and cross-complainant Budget Financial Corporation ("Budget"). In this opinion we consider whether a loan made by a personal property broker to a home builder is void as usurious because the security upon which the lender relied consists of notes secured by deeds of trust which represent a portion of the purchase price of homes sold by the borrower. The complaints allege: On August 1, 1963, Budget, a licensed personal property broker, made a loan to plaintiffs Moody-McCloud, et al., ("the borrowers") of $59,567.76 bearing interest at the rate of 12 percent per year and secured by a chattel mortgage covering furniture and furnishings having a value of less than $1,500, an assignment of promissory notes secured by second deeds of trust on real property, and an assignment of the payments due on the assigned notes. The notes represented a portion of the sales price of houses sold by the borrowers in the course of

their business of building and selling houses.[1] The amount of the loan was equal to 50 percent of the unpaid balance of the collateral notes assigned to secure the loan. The loan agreement pursuant to which the loan was made provided that the borrowers were eligible to borrow additional sums at the same rate of interest upon the assignment to Budget of additional collateral notes having an unpaid principal amount due equal to twice the amount of the additional loan. The agreement provided that should any additional loan be made the borrowers would execute a new note in an amount equal to the unpaid balance of the then existing obligation to defendant. The borrowers agreed to maintain the loan balance at an amount equal to not more than 50 percent of the unpaid balance of the collateral notes assigned as security. The agreement provided that the borrowers should continue to collect the installments due on the collateral notes, deposit the payments received in a trust account in Budget's name, and render a monthly accounting to Budget of the amounts so collected. The borrowers agreed to cause their records pertaining to the collateral notes to reflect the assignment of the notes and second deeds of trust to Budget. Budget recorded the instruments of assignment in the office of the county recorder. On February 17, 1964, the borrowers executed and delivered a new note to Budget in the sum of $94,725.40, which represented the principal amount then due on the loan, and as additional collateral gave to Budget a chattel mortgage on household furniture and furnishings worth $4,000. Plaintiff Riebe is the assignee of the collateral notes and deeds of trust. Plaintiffs allege that in making the loan and additions thereto Budget relied solely on the security of the deeds of trust underlying the notes assigned as collateral security.

Plaintiffs Moody-McCloud, et al., the borrowers, prayed for rescission, return of the interest paid and treble damages on the ground that the transaction was usurious. Plaintiff Riebe sought a declaration on the same ground that he is entitled to have the collateral notes and deeds of trust assigned to him

[1]This fact is set forth in the judgment which states that the facts recited therein were declared in open court by all counsel to be not in dispute. The recitation of facts in the judgment appears to be in the form of a stipulation offered and accepted and an order based thereon amending the pleadings. No transcript of the oral proceedings on the motion is in the record. If appellants had believed themselves to be aggrieved by the recitals in the judgment they had the opportunity to correct any alleged error in the trial court by proper motion. They did not do so and therefore we treat the recitations in the judgment as amendments to the pleadings.

and an injunction forbidding Budget from selling the collateral notes for an amount less than the principal amount thereof.

In its cross-complaint Budget alleged that the borrowers were in default on their note, and that the principal amount then due was $54,033.30.[2] Budget prayed for judgment in this amount and possession of the property described in the two chattel mortgages.

Appellants contend that the contract of loan is void on the ground that the loan violated the usury provisions contained in article XX, section 22 of the California Constitution[3] and the Personal Property Brokers Law, (Financial Code, division 9, §§ 22000-22653 (unless otherwise specified, all statutory references will be to the Financial Code))[4] by reason of the fact that the loan was secured by personal property having

---

[2]The amount due was admitted by appellants in open court and recited in the judgment. See footnote 1.

[3]Article XX, section 22 of the California Constitution, adopted November 6, 1934, provides in part as follows: "The rate of interest upon the loan or forbearance of any money . . . shall be 7 per cent per annum but it shall be competent for the parties to any loan or forbearance of any money . . . to contract in writing for a rate of interest not exceeding 10 per cent per annum. . . .

"However, none of the above restrictions shall apply to any building and loan association . . . or to any corporation incorporated in the manner prescribed in and operating under that certain act entitled 'An act defining industrial loan companies . . .' approved May 18, 1917, as amended, or any corporation incorporated in the manner prescribed in and operating under that certain act entitled 'An act defining credit unions . . .' approved March 31, 1927, as amended or any duly licensed pawnbroker or personal property broker, or any bank . . . or any non-profit cooperative association organized under Chapter 4 of Division 6 of the Agricultural Code . . . or any corporation . . . engaged exclusively in the business of marketing agricultural . . . products on a co-operative nonprofit basis in loaning . . . money to the members thereof or in connection with any such business or any corporation securing money or credit from any federal intermediate credit bank, organized and existing pursuant to the provisions of an act of Congress entitled, 'Agricultural Credits Act of 1923,' as amended . . ., nor shall any such charge of any said exempted classes of persons be considered in any action or for any purpose as increasing or affecting or as connected with the rate of interest hereinbefore fixed. The Legislature may from time to time prescribe the maximum rate per annum of, or provide for the supervision, or the filing of a schedule of, or in any manner fix, regulate or limit, the fees, bonus, commissions, discounts or other compensation which all or any of the said exempted classes of persons may charge or receive from a borrower in connection with any loan . . . of any money. . . ."

[4]Section 22651. "If any amount other than or in excess of the charges permitted by this division is charged, contracted for, or received, except as the result of an accidental and bona fide error in computation, the contract of loan is void, and no person has any right to collect or receive any principal, charges, or recompense in connection with the transaction."

Section 22652: "Except as provided in Section 22651, if any provi-

only nominal value and that the only security for the loan in reality consisted of liens on real property. Appellants argue more particularly that section 22053 of the Financial Code, which exempts from certain restrictions of the Personal Property Brokers Law, bona fide loans in excess of $5,000, was used by Budget for the purpose of evading the restriction against lending on the security of real property.

Personal property brokers are restricted generally from taking liens upon real estate as security for a loan by section 22466.[5] Section 22053 provides that certain sections of the Personal Property Brokers Law, including section 22466, "do not apply to any bona fide loan of a principal amount of five thousand dollars ($5,000) or more or to a duly licensed personal property broker in connection with any such loan, if the provisions of this section are not used for the purpose of evading this division. . . ."

Section 22054, enacted in 1967,[6] makes clear that the terms "bona fide" and "purpose of evading this division"

sion of this division is violated in the making or collection of a loan, the contract of loan is void, and no person has any right to collect or receive any principal, interest, or charges in connection with the transaction."

[5]Section 22466. "No licensee shall take a lien upon real estate as security for any loan made under this division, except such lien as is created by law upon the recording of an abstract of judgment."

[6]Section 22054. "In determining under Section 22053 whether a loan is a bona fide loan of a principal amount of five thousand dollars ($5,000) or more and whether the provisions of that section are used for the purpose of evading this division, the following principles apply:

(a) If a borrower applies for a loan in a principal amount of less than five thousand dollars ($5,000), and a loan to that borrower of a principal amount of five thousand dollars ($5,000) or more is made by a licensed personal property broker, and

(1) No adequate economic reason for the increase in the size of the loan exists, and

(2) By prearrangement or understanding between the borrower and the licensee a substantial payment is to be made upon the loan with the effect of reducing the principal amount of the loan to less than five thousand dollars ($5,000) within a short time after the making of the loan other than by reason of a requirement that the loan be paid in substantially equal periodical installments, then

the loan shall not be deemed to be a bona fide loan of the principal amount of five thousand dollars ($5,000) or more and the provisions of Section 22053 shall be deemed to be used for the purpose of evading this division unless the loan complies with the provisions of this division relating to loans of less than five thousand dollars ($5,000).

(b) An individual advance of money of less than five thousand dollars ($5,000) pursuant to a revolving loan agreement or similar agreement between a borrower and a licensed personal property broker, or a loan agreement providing for the making of advances to the borrower from time to time up to an aggregate maximum amount, shall be deemed to be loan of a principal amount of five thousand dollars ($5,000) or more if the total unpaid principal amount of all loans owing by the borrower

used in section 22053 refer to the determination of the amount of the loan and not the character of the security given therefor. Section 22054 is consistent with a prior judicial interpretation of a provision similar to section 22053 contained in the Industrial Loan Law. (See *Peoples Finance & Thrift Co. of Beverly Hills* v. *Mike-Ron Corp., Inc.*, 236 Cal.App.2d 897 [46 Cal. Rptr. 497], interpreting § 18649.) ▮ The pleadings establish without dispute that the borrowers applied for and received from Budget a loan and additions thereto greatly in excess of $5,000. Appellants do not suggest and have not in their complaints or otherwise at any time in these proceedings suggested that the amount of the loan here involved was determined by other than economic considerations.

Furthermore, section 22054, subdivision (c) provides that "the fact that the transaction is in the form of a sale of . . . instruments . . . shall not be deemed to affect the bona fides of the loan or the amount thereof or to indicate that the provisions of Section 22053 are used for the purpose of evading this division. As used herein . . . 'instruments' shall have the same meaning as in the Commercial Code." ▮ Division 9 of the Commercial Code does not apply to liens on real estate (Com. Code, § 9104, subd. (j)), but it does apply to a security interest in a secured obligation which in turn is secured by a lien on real estate. (Com. Code, § 9102, subd. (3).[7] The Commercial Code applies, therefore, to the security interest of Budget in the collateral notes. That being

to the licensed personal property broker at the time of any such advance is five thousand dollars ($5,000) or more.

(c) If a loan made by a licensed personal property broker is in a principal amount of five thousand dollars ($5,000) or more, the fact that the transaction is in the form of a sale of accounts, chattel paper, contract rights, goods or instruments or a lease of goods shall not be deemed to affect the bona fides of the loan or the amount thereof or to indicate that the provisions of Section 22053 are used for the purpose of evading this division. As used herein, 'accounts,' 'chattel power,' 'contract rights,' 'goods' and 'instruments' shall have the same meaning as in the Commercial Code.

*This section shall be deemed declaratory of existing law and not amendatory thereof.*" (Italics added.)

[7]Thus, the official comment gives the following illustration of section 9102, subdivision (3) in comment 4:

"The owner of Blackacre borrows $10,000 from his neighbor, and secures his note by a mortgage on Blackacre. This Article is not applicable to the creation of the real estate mortgage. However, when the mortgagee in turn pledges this note and mortgage to secure his own obligation to X, this Article is applicable to the security interest thus created in the note and the mortgage. Whether the transfer of the collateral for the note, i.e., the mortgagee's interest in Blackacre, requires further action (such as recording an assignment of the mortgagee's interest) is left to real estate law. . . ."

so, no inference of lack of bona fides can be made from the fact that the notes assigned to Budget as security were in turn secured by liens on real property. No significance can be attached to the fact that section 22054, subdivision (c) refers to a "sale" of instruments whereas this case involves an assignment of instruments. The form of the transaction here is more like that of the customary bona fide loan than it would have been had the transaction taken the form of a sale of the collateral notes to Budget with corollary guarantees, buy-back, or similar agreements by the borrowers. ■ Therefore, the pleadings establish as a matter of law that the restrictive provisions of the Personal Property Brokers Law made inapplicable to loans of $5,000 or more by section 22053 are inapplicable to the loan here considered.

■ Appellants argue further that because the security relied upon by Budget consisted of liens on real property and because the tangible personal property given as security for the loan had only a nominal value in relation to the amount of the loan, Budget cannot rely on its status as a personal property broker to exempt it from the usury law with respect to this transaction. This argument misconceives the nature of the security taken by Budget. Although part of the security consisted of the assignment to Budget of deeds of trust on houses sold by the borrowers to their customers, another part of the security consisted of the assignment of the purchase money notes of the purchasers of the houses. These notes are personal property (Civ. Code, §§ 14, subd. 3, 658, 663; Code Civ. Proc., § 17, subd. 3) and, as we shall explain, since they represented income of the borrowers, were properly taken by Budget as security for a loan made in the course of its business as a personal property broker.

■ Article XX, section 22 of the California Constitution exempts from the operation of the usury law various classes of lenders including "duly licensed . . . personal property brokers." The term "personal property brokers" used in the Constitution refers to the class of lenders which was defined in the Personal Property Brokers Act of 1933 at the time the constitutional provision was adopted. (*Budget Finance Plan* v. *Gamson,* 34 Cal.2d 95, 97 [207 P.2d 825].) The definition in that act is substantially the same as that found in the original Personal Property Brokers Act of 1909[8] and identical with

---

[8]Section 1. "That every person or corporation engaged in the business of loaning or advancing money or other thing and taking in whole or in part as security for such loan or advance any chattel mortgage, bill

the definition found in section 22009 which declares, "'Personal property broker,' includes all who are engaged in the business of lending money and taking in the name of the lender, or in any other name, in whole or in part, as security for such loan, (1) any contract or obligation involving the forfeiture of rights in or to personal property, the use and possession of which property is retained by other than the mortgagee or lender, or (2) any lien on, assignment of, or power of attorney relative to wages, salary, earnings, income, or commission." (Parenthetical numbers added.) ▆ "[T]here can be no intent in a statute not expressed in its words, and there can be no intent upon the part of the framers of such a statute which does not find expression in their words." (*Ex parte Goodrich*, 160 Cal. 410, 416-417 [117 P. 451, Ann.Cas. 1913A 56].) ▆ The language of the statutory definition of personal property broker in no way indicates an intention to confine its application to personal as opposed to business loans. Therefore, it was apparently the intention of the framers and adopters of the amendment to include in the category of personal property brokers those lenders who accept as security a lien on the business income of the borrower. ▆ In confirming this interpretation we may properly look to the report of the interim committee appointed by the Assembly in 1933 "to investigate the problems attending the regulation of the business of commercial loans and to recommend legislation. . . ." (*Carter* v. *Seaboard Finance Co.*, 33 Cal.2d 564, 582 [203 P.2d 758].) In its report[9] the committee made clear that the Legislature has always contemplated that personal property brokers would make business as well as personal loans.[10]

---

of sale or other obligation or contract involving the forfeiture of rights in or to personal property, the use or possession of which is retained by other than the mortgagee or lender, or engaged in the business of loaning or advancing money or other thing, and taking either in whole or in part as security therefore [*sic*] any lien on, assignment of or power of attorney relative to wages, salary, earnings, income or commissions, shall be held, and, for the uses and purposes of this act, is hereby declared and defined to be a personal property broker." (Stats. 1909, p. 969.)

[9]Report of the Interim Committee of the Assembly of the State of California for the Investigation of Small Loans. 1935 Cal. Assembly Journal 1297, hereinafter cited as the Report.

[10]Thus, in the Report the committee states, "Since 1909 it has been the legislative policy of this State to divide the lending transactions for the purpose of regulation into the three general classifications of (1) loans secured by real estate, (2) loans secured by personal property, and (3) unsecured loans. . . . This report is concerned with the second class of loans, i.e., those secured by personal property. For the purpose of regulation, accuracy is increased by the classification of such loans as

The first legislation to implement the amendment as to personal property brokers was the Brokers Act of 1939 which established graduated rates in excess of 10 percent per year for small loans but imposed no limits on interest charges for loans over $300.[11] (Stats. 1939, ch. 1045, p. 2892.) This implementing legislation gives a further indication that the Legislature contemplated that personal property brokers would make large business loans as well as small personal loans.

█ The "income" of a person engaged in business is that which comes in or is received without reference to the outgoing expenditures. (*People* ex rel. *J. E. Farnum, et al., Bank Comrs.* v. *San Francisco Sav. Union,* 72 Cal. 199, 203 [13 P. 498].) █ Although "profit" and "income" are sometimes used as synonymous phrases, there is no reason to attach the more restricted meaning to the definition of "income" as used in section 22009. The statute seeks to define certain categories of collateral not usually acceptable to commercial banks.[12] An assignment of income as security satisfies this purpose whether the income assigned is "gross" or "net." (To the same effect see 40 Ops. Cal.Atty.Gen. 152, 154. █ The notes which were assigned as collateral to Budget represented a portion of the purchase price of houses sold by the borrowers in the course of their business of building and sell-

---

either consumptive or productive. A merchant borrows money with which to enlarge his stock; an industrialist borrows to build a factory; a farmer to buy seed. These are 'productive' loans; they were made to enable production and profit. . . . The principal subdivision of secured loans is that which distinguishes between loans secured by real estate and loans secured by personal property. In the sense that personal property is used as security, it is distinguished from real property by being movable, destructible, difficult to record as to property rights therein, susceptible of abuse as to rights of third persons, and not subject to a period of redemption after foreclosure. These differences make personal property less valuable as security both to borrower and to lender; special regulations are required to overcome these difficulties. Borrowers on personal property are subject to temptations in respect to its treatment after a lien is created, and lenders are tempted to abuses after default. . . . Obviously those personal property brokers who engage in the business of making loans in large amounts deal with borrowers whose loans, as a rule, are 'productive,' and who are economically better able to protect themselves against exploitation and unfair practice.'' (pp. 1298, 1305.)

[11]Between 1934 and 1939 there was no limit on the rate of interest chargeable by a personal property broker. (*Wolf* v. *Pacific Southwest Discount Corp.,* 10 Cal.2d 183 [74 P.2d 263]; *Matulich* v. *Marlo Inv. Co.,* 7 Cal.2d 374 [60 P.2d 842].)

[12]See Report, p. 1300, ''Suppose, however, that the borrower has no security. Is he to be barred from borrowing money? Because he has no bankable collateral, is he to be deprived of a right to borrow, thereby being forced to suffer the burden or some emergency or loss?''

ing houses. The collateral notes, therefore, represented "income" to the borrowers in the broad sense in which that term is used in the Personal Property Brokers Law.[13]

The character of the collateral notes as valid security under section 22009 is not changed by the fact that the notes were themselves secured by liens on real property. The allowance of higher rates to personal property brokers is justified by the great costs of investigation and administration involved in operating a small loan business and the fact that personal property is less valuable as security than real property. (See *Carter* v. *Seaboard Finance Co., supra,* 33 Cal. 2d 564, 587; *Eaker* v. *Bryant,* 24 Cal.App. 87 [140 P. 310]; *Matter of Application of Stephan,* 170 Cal. 48 [148 P. 196, Ann.Cas. 1916E 617]; Report, pp. 1303, 1305.) In accepting purchase money notes as collateral, Budget ran the risk that the borrowers might give false or inaccurate information as to the balance due on the notes at the time of the assignment to Budget, or divert collections on the notes to the borrower's own use, or fail to account properly for collections made. If the borrowers should default in their obligations to Budget, Budget could not recoup its loss by seeking recourse against the real property securing the assigned notes so long as no default occurred thereon. The investigation required to forestall these possibilities might well be more extensive and expensive than that required if Budget had been given a lien directly on real property as security for the loan. Therefore, many of the reasons for treating personal property brokers as a distinct class of lender exist with respect to the business of lending upon the security of collateral notes such as those taken by Budget.

The use of the term "in whole or in part" in the definition of personal property broker indicates an intention to include therein not only lenders whose security consists entirely of liens on the kinds of personal property enumerated therein, but also those whose loans are only partly so secured. (See *Budget Finance Plan* v. *Gamson, supra,* 34 Cal.2d 95, 99.) In *Budget Finance Plan* v. *Gamson,* the Supreme Court

[13]Budget also contends that the security here given can also be regarded as personal property "the use and possession of which . . . is retained by other than the mortgagee or lender. . . ." (§ 22009) This theory is discussed in *Accounts Receivable Financing and the California Personal Property Brokers Act,* 14 Stanford L.Rev. 520. In view of our holding that the assignment of the collateral notes constituted a lien on income within the meaning of section 22009, we do not discuss or pass upon this contention.

upheld a judgment in favor of a personal property broker who had made a loan of $20,000 and taken as security therefor a chattel mortgage on two automobiles and household furnishings have a combined value of $5,000 and a deed of trust on a parcel of real property. The borrowers argued that if personal property brokers are permitted to take real estate liens on loans over $5,000, as permitted by a 1945 amendment (now embodied in section 22053), ''the very basis upon which the classification and regulation of personal property brokers has in the past been sustained as reasonable would be removed and constitutional provisions prohibiting discriminatory legislation would be violated.'' (34 Cal.2d at p. 100.) In discussing that contention the Supreme Court stated, ''However, the 1945 amendment is not to be construed as permitting those holding personal property brokers' licenses to lend solely on the security of real property liens, for so construed it might cause the classification of personal property broker to lose its distinctiveness. When read in conjunction with the definition to which we have referred, [the definition now embodied in section 22009] the 1945 amendment is found to be an authorization to licensees to take real estate security in part when making loans of $5,000 or more so long as the good faith requirements of the statute are satisfied.'' (*Budget Finance Plan* v. *Gamson, supra,* 34 Cal.2d 95, 101.) The case before us does not present the question with which the foregoing statement is concerned. There is nothing in the transaction here considered which can be construed as possibly causing the classification of Budget as a personal property broker to lose its distinctiveness. Although Budget was given liens on real property as security for its loan, it can resort to those liens only as and if the trust deed note debtors as well as the borrowers here are in default on their obligations. If the trust deed debtors are not in default, the only way that Budget can realize on the security for its loan in the event that the borrowers here are in default is to sell the collateral notes and the underlying deeds of trust, or to collect the payments on the notes as they become due. In neither of these cases will it be able to obtain payment by sale of the underlying real estate. Budget has taken the kind of risk that justifies its classification as a personal property broker. Therefore, the presence of the deeds of trust as part of the security taken by Budget does not disqualify the transaction as a personal property broker's loan.

 Budget's motions for judgment on the pleadings had the purpose and effect of a general demurrer and on review

are to be tested by the same rules. (*Colberg, Inc.* v. *State of California* ex rel. *Dept. of Public Works,* 67 Cal.2d 408, 411 [62 Cal.Rptr. 401, 432 P.2d 3].) Since the complaints state no basis for relief other than the alleged invalidity of the loan as a personal property broker transaction, they fail to state a cause of action. By reason of the stipulation of the cross-defendants as to the balance due on the loan and the value of the property covered by the chattel mortgages given as security for the loan, the answers to the cross-complaint fail to state a defense thereto. Therefore, it was proper to grant Budget's motions for judgment on the pleadings.

The judgments are affirmed.

Cobey, Acting P. J., and Frampton, J. pro tem.,* concurred.

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.