[No. B033836. Second Dist., Div. Five. Sept. 24, 1991.]

THOMAS N. DRAPER, Plaintiff and Appellant, v.
AMERICAN FUNDING LIMITED, Defendant and Appellant.

## COUNSEL

Mitchell, Silberberg & Knupp, Richard R. Mainland, Thomas P. Lambert and John L. Amsden for Plaintiff and Appellant.

Chase, Rotchford, Drukker & Bogust, David Clark, Ladell Hulet Muhlestein, Joan E. Hewitt and John G. Nuanes for Defendant and Appellant.

## OPINION

**ASHBY, Acting P. J.**—Plaintiff Thomas N. Draper (Draper) borrowed money from defendant American Funding Limited, individually and doing business as Southern California Funding Limited (American Funding). After making payments for approximately three years, Draper wished to pay off the loan. When American Funding informed Draper it would cost Draper more than the amount borrowed to pay off the indebtedness, Draper brought a declaratory relief action asserting the amount claimed as owing exceeded the limits for prepayment penalties allowed by Civil Code section 2954.9. Draper claimed American Funding's use of the "Rule of 78's" to ascertain the amount owing resulted in the error. The matter proceeded to trial. The trial court held that utilizing the Rule of 78's constituted an excessive prepayment penalty and entered declaratory judgment for Draper. Additionally, the court awarded Draper $5,000 for attorney's fees pursuant to Civil Code section 1717. American Funding appeals from the judgment. Draper

appeals from the award of attorney's fees arguing he was entitled to a greater sum. We reverse.

## FACTS

On June 18, 1981, Draper borrowed $75,650 from American Funding for 15 years at 18 percent interest. The loan was secured by Draper's single-family residence and personal property and was evidenced by a deed of trust and a promissory note. The interest was precomputed and the loan payable in equal monthly installments. Draper signed a promissory note for $231,900. This sum was ascertained by adding the total interest ($156,251) to the principal. His equal monthly payments were $1,288.34.

With regard to prepaying the loan, the note stated, borrower "may prepay the loan in full or in part at any time. Upon prepayment in full or on acceleration of maturity, [borrower] will receive a rebate of the unearned interest portion of the precomputed Finance Charges computed by the Rule of 78." The document also contained language similar to Civil Code section 2954.9 regarding the limitations on prepayment charges: "If more than 20% of the original amount is prepaid in any twelve (12) month period, whether before or after acceleration for default, within 5 years after the date of this loan, [borrower] agree[s] to pay a prepayment charge equal to six months interest on the amount prepaid which is in excess of 20% of the original principal amount of the loan." The document also stated that, "No portion of the prepaid Finance Charge will be included in calculating a prepayment charge." Prepaid finance charges totalled $4,747.60. These charges included, among other expenses, broker's commission, credit investigation, finance charges, and escrow fee.

Through April 10, 1984, Draper paid a total of $41,226.88 on the loan. When Draper wished to pay off the entire loan American Funding informed Draper that $94,585 was required.

In ascertaining the sum owed ($94,585), American Funding utilized the Rule of 78's to calculate the amount of unearned interest. The parties admit that had American Funding utilized the actuarial method of ascertaining the unearned interest, rather than the Rule of 78's, Draper would have owed approximately $17,410 less.

## DISCUSSION

*Terminology*

Before we discuss the legal issue, it is necessary to explain the pertinent terminology:

1. Precomputed loan—The total interest for a loan is calculated and then added to the original principal. The monthly payments paid by the borrower are in equal amounts for the duration of the loan, without allocation between interest and principal.

2. Rule of 78's and the actuarial method—When a borrower wishes to prepay a precomputed loan, the amount of interest which has been unearned by the lender must be determined. Two methods of computing this sum are the Rule of 78's and the actuarial method. The actuarial method measures the true interest yield by attributing to each payment period an amount of interest equal to the outstanding balance multiplied by the interest rate per payment period. The Rule of 78's, commonly called the "sum-of-the digits" method, attributes an amount of interest to each payment period which is equal to the total amount of interest multiplied by a fraction, which fraction is equal to the number of payments left to be made on the loan divided by the sum of the total number of prepayment periods.[1] (Footnote No. 1 more fully explains the mathematics of the actuarial method. Footnote No. 2 more fully explains the mathematics of the Rule of 78's.)[2]

---

[1]The actuarial method is also described as: "[E]very time a creditor receives a payment, [the creditor] must first calculate the interest due, then deduct the interest from the payment made, and finally apply the balance of the payment to reduce the outstanding balance of the principal. The process is repeated in succeeding months." (Hunt, *The Rule of 78: Hidden Penalty for Prepayment in Consumer Credit Transactions* (1975) 55 B.U.L.Rev. 331, 336, fn. omitted, hereinafter referred to as Hunt; *Ballew* v. *Associates Fin. Ser. Co. of Neb., Inc.* (D.Neb. 1976) 450 F.Supp. 253, 257, fn. 1.)

[2]"Central to the Rule of 78ths is a focus on the number of units of debt, which are months under most installment loan contracts. If a loan is to be repaid over a period of one year, or twelve monthly units, the sum of these monthly units (1+2+3 . . . +12) will equal 78. If the loan is for a 24 month period, this sum of the monthly units will equal 300. Technically, then, the Rule of 78ths is a misnomer for loans other than for twelve installment periods." (Comment, *Consumer Protection: Truth-in-Lending Disclosure of the Rule of 78ths* (1973) 59 Iowa L.Rev. 164, 165, fn. omitted, hereinafter referred to as Iowa L.Rev.)

*Drennan* v. *Security Pac. Nat. Bank* (1981) 28 Cal.3d 764 768, footnote 1 [170 Cal.Rptr. 904, 621 P.2d 1318], utilizes the Commerce Clearing House Credit Guide to explain the operation of the rule: " 'On a 12-month repayment plan, the numbers 1 through 12 are added together to provide the figure 78. This becomes a denominator in the calculation. The sum of the months expired at the time of prepayment becomes the numerator. The resulting fraction represents the earned finance charge. [¶] The first month of a 12-month obligation is considered as 12 because the outstanding balance is 12 times as large during the first month as it is for the last month. The second month is 11, and so on until 1 designates the final month. [¶] Thus, the portion of the finance charge considered earned after the first month is 12/78 of the entire finance charge. For the second month alone it is 11/78. If prepayment occurs at the end of the second month, the earned finance charge is 23/78 of the total finance charge—12/78 plus 11/78. [¶] If prepayment occurs after the 8th month, the amount of earned finance charge will be 68/78 (the sum of 12/78, 11/78 . . . 5/78). Put another way, the rebate will amount to 10/78 of the total finance charge, less any charges that might be deducted from that amount.' (CCH Consumer Credit Guide, Truth-in-Lending, ¶ 1452.)"

Over the life of a loan, the amount of interest to be paid is the same using either method. Further, both methods allocate more interest in the early months of a loan because it is then that the borrower has the use of the greater portion of principal. However, if a loan is prepaid prior to maturity, a disparity results depending upon which method of calculation is used. If the Rule of 78's is used, a consumer will have to pay more to prepay the loan. As the loan size and duration of the loan increase, the greater the disparity and the greater the cost to the consumer. The Rule of 78's was originally formulated when lenders were forced to do calculations by hand and applying the actuarial method was complicated and difficult. It is understood that with the advent of computers and mathematical tables, this reason for the Rule of 78's is no longer supportable. Additionally, the Rule of 78's was thought to permit lenders to recover their transaction costs, e.g., advertising, insurance, and overhead expenses. However, it is presently acknowledged that lenders can recoup these expenses by charging other fees, such as points. It is also acknowledged that borrowers do not understand the implications of the Rule of 78's and its use results in hidden costs to borrowers. (*Drennan* v. *Security Pac. Nat. Bank, supra,* 28 Cal.3d at p. 779; Hunt, *supra,* at pp. 338, 339, 351, 365; Iowa L.Rev., *supra,* at pp. 165, 175, 176; Analysis of Assem. Bill No. 258[3] prepared by State Banking Department, May 21, 1979, for Assem. Com. on Finance, Insurance and Commerce, Discussion and Chart regarding "Rule of 78ths"; see also cases cited in fn. 4.)[4]

---

[3]Assembly Bill No. 258 was enacted in 1979 (Stats. 1979, ch. 805, § 1, pp. 2769-2770); it amended numerous Civil Code sections, repealed others, and added among others, section 1799.5.

American Funding has supplied a legislative history of Civil Code section 2954.9. We have obtained and examined the histories relating to numerous Financial Code sections relating to personal property brokers as well as the legislative history of Civil Code section 1799.5. The analyses of the bills discussed herein were all provided by the Legislative Intent Service.

[4]American Funding suggests the Rule of 78's is a "commonly used" method of determining the amount of unearned interest. This is an overbroad conclusion. First, there is no factual support for this statement in the record. Additionally, while *Drennan* v. *Security Pac. Nat. Bank, supra,* 28 Cal.3d at page 779, suggests it is the "prevailing rule in this state" and a leading law review article on the Rule of 78's states it is the "predominant method used to determine refunds of unearned finance charges upon prepayment" (Hunt, *supra,* at p. 332), the discussions in these authorities relate only to consumer loans, not to loans on real property. We have searched numerous books on financing real property in California, and none even mentions the Rule of 78's. Further, the legislative histories which we have examined only discuss the Rule of 78's when addressing concerns dealing with consumer loans. Thus, we cannot conclude, as does American Funding, that the Rule of 78's is a "commonly used" method of calculation when the loan is for real property. We acknowledge, however, that second mortgages, like the loan before us, are frequently discussed when other large consumer loans are being analyzed. (The following citations deal with the Rule of 78's in reference to Truth in Lending Laws: *Bone* v. *Hibernia Bank* (9th Cir. 1974) 493 F.2d 135; *Croysdale* v. *Franklin Sav. Ass'n* (7th Cir. 1979) 601 F.2d 1340; *Gantt* v. *Com. Loan Co.* (8th

*Issue Presented*

Civil Code section 2954.9 limits the amount a lender can charge when loans secured by residential property are paid before maturity.[5] The trial court determined Civil Code section 2954.9 applied to Draper's loan and additionally concluded the use of the Rule of 78's to determine the rebate of unearned interest constituted a prepayment penalty in excess of that allowed by Civil Code section 2954.9.

Before the court reached this conclusion, American Funding pointed out to the court that Draper's loan document identified American Funding's personal property broker's license number and that American Funding was a personal property broker. American Funding then suggested it was solely controlled by the personal property broker laws. As American Funding suggests, and contrary to the trial court's conclusion, the personal property broker laws control the issues before us. Thus we need not discuss Civil Code section 2954.9.

Personal property brokers are regulated by Financial Code section 22000 et seq. The laws are complicated in that there are many cross-references and interrelated exemptions as well as frequent changes to the statutory scheme through amendments. These statutes provide maximum charges on loans and specifically exempt such lenders from other laws, such as usury. (*West Pico Furniture Co.* v. *Pacific Finance Loans* (1970) 2 Cal.3d 594, 613 [86 Cal.Rptr. 793, 469 P.2d 665]; *Hall* v. *Beneficial Finance Co.* (1981) 118 Cal.App.3d 652, 654 [173 Cal.Rptr. 450]; *Lenes* v. *Dean* (1976) 64 Cal.App.3d 845, 849-850 [135 Cal.Rptr. 14].)

"Both statutory and case law have established a right in personal property brokers to take interests in real property as partial security for loans above fixed minimums." (*Hall* v. *Beneficial Finance Co., supra,* 118 Cal.App.3d at p. 655.) Even if the security in the realty far exceeds that of

Cir. 1978) 573 F.2d 520; *Ballew* v. *Associates Fin. Ser. Co. of Neb., Inc., supra,* 450 F.Supp. 253; *Kenney* v. *LandisFinancial Group, Inc.* (N.D.Iowa (1972) 349 F.Supp. 939; *Lanier* v. *Associates Finance, Inc.* (1986) 114 Ill.2d 1, [101 Ill.Dec. 852, 499 N.E.2d 440].)

[5]Civil Code 2954.9 applies to loans for residential property of four units or less. It entitles borrowers to prepay such loans in whole or in part. The statute allows a borrower to agree to a prepayment change. However, "only a prepayment made within five years of the date of execution of such mortgage or deed of trust may be subject to a prepayment charge and then solely as herein set forth. An amount not exceeding 20 percent of the original principal amount may be prepaid in any 12-month period without penalty. A prepayment charge may be imposed on any amount prepaid in any 12-month period in excess of 20 percent of the original principal amount of the loan which charge shall not exceed an amount equal to the payment of six months' advance interest on the amount prepaid in excess of 20 percent of the original principal amount." (Added by Stats. 1974, ch. 1059, § 1, pp. 2280-2281; amended Stats. 1975, ch. 763, § 2, pp. 1775-1776; amended Stats. 1977, ch. 579, § 32, pp. 1838-1839; amended Stats. 1979, ch. 391, § 1, p. 1458 et seq.; amended Stats. 1990, ch. 663, § 2.)

the personalty, the loan and the lender are regulated by this statutory scheme. (*Ibid.*; *Budget Finance Plan* v. *Gamson* (1949) 34 Cal.2d 95, 99-101 [207 P.2d 825]; *Riebe* v. *Budget Financial Corp.* (1968) 264 Cal.App.2d 576, 584-588 [70 Cal.Rptr. 654].)[6] Here, Draper's loan was secured by his residence as well as personalty located therein. Thus, contrary to the trial court's conclusion, even though the security in Draper's real property exceeded that which was given in his personalty, the form of the loan was controlled by the laws regulating personal property brokers.

Our task, therefore, is to examine the personal property broker laws to determine if these statutes prohibited American Funding from contracting with Draper to use a precomputed loan or from utilizing the Rule of 78's to calculate interest upon its prepayment. We examine the applicable laws in existence on June 18, 1981, when the agreement was made. (*City of Torrance* v. *Workers' Comp. Appeals Bd.* (1982) 32 Cal.3d 371, 378-379 [185 Cal.Rptr. 645, 650 P.2d 1162]; *Swenson* v. *File* (1970) 3 Cal.3d 389, 393 [90 Cal.Rptr. 580, 475 P.2d 852].)

We conclude that the personal property broker laws applicable to this loan did not prohibit the use of a precomputed loan nor did they mandate the use of the actuarial method upon the prepayment of Draper's loan. Thus, American Funding did not erroneously utilize the Rule of 78's in calculating the amount Draper owed when he desired to repay his loan.

The difficulty is in determining which laws applied to this loan and if any of the statutes exempted American Funding from certain restrictions.

Numerous Financial Code sections deal with precomputed loans and computing charges upon the prepayment of such loans.[7] These laws were enacted specifically to address the use of the Rule of 78's.[8]

---

[6]Financial Code section 22466 prohibits licensees from taking deeds of trusts on loans of less than $5,000. Financial Code section 22009 permits such licensees to loan money and take as security therefor "personal property." This section, along with others, "does not evidence an intent to preclude personal property brokers from relying *in part* on real property as security . . . ." (*Raysinger* v. *Peoples Inv. & Loan Assn.* (1973) 36 Cal.App.3d 248, 253 [112 Cal.Rptr. 163].)

[7]Personal property brokers convinced the Legislature that precomputed loans were easier to market. Thus, some laws allow a personal property broker to utilize a precomputed loan, but upon prepayment prohibit the use of the Rule of 78's. (June 29, 1979, Dept. of Corporations revised legislative analysis of Sen. Bill No. 188, as amended May 31, 1979. Sen. Bill No. 188 was enacted in 1979 [Stats. 1979, ch. 466, § 1, p. 1620 et seq.] to amend Fin. Code, §§ 22451, 22458.1 and 22480 and to add § 22481.)

[8]Senate Committee on Insurance and Financial Institutions Analysis of Senate Bill No. 188 (Dills) as amended April 23, 1979; September 1979 Department of Consumer Affairs Enrolled Bill Report on Senate Bill No. 188 (Sen. Bill No. 188 was enacted in 1979 [Stats. 1979, ch. 466, § 1, p. 1620 et seq.] to amend Fin. Code, §§ 22451, 22458.1 and 22480 and to add

Financial Code section 22480 regulates the method of computing charges on precomputed loan transactions. It incorporates Financial Code sections 22454 and 22454.1, which require the use of the actuarial method of computation. Together these statutes allowed the use of the Rule of 78's only for small loans. In 1981, at the time this contract was executed, Financial Code section 22053[9] exempted licensees from the requirements of 22480 if the noncommercial loan was greater than $10,000, as was Draper's loan.[10]

Financial Code section 22482 also regulates the prepayment rebate of precomputed charges. This section virtually repeats Financial Code section 22480. Section 22482 states that computations are to be done in "a manner similar to that provided in Section 22480" and also requires computations in accordance with Financial Code sections 22454 or 22454.1, thus requiring that the actuarial method be utilized when a loan is prepaid. In 1981, section 22482 dealt with rebates on large, noncommercial loans, those with a principal amount of more than $10,000. (Stats. 1981, ch. 144, § 25, pp. 941-942.)

§ 22481); Legislative Counsel's Digest of Assembly Bill No. 627, introduced by Assembly-man Tucker, February 24, 1981; Summary of Assembly Bill No. 627 as amended in Assembly April 1981; June 12, 1981 Senate Democratic Caucus Summary of Assembly Bill No. 627 as amended June 8, 1981 (Assem. Bill No. 627 was enacted in 1981 [Stats. 1981, ch. 144, § 1, p. 929 et seq.]; it amended among others Fin. Code, § 22480 and added § 22482).

[9]Section 22053 states all loans of $10,000 or more or commercial loans of more than $5,000 are exempted from, among other statutes, section 22480. *In 1984 section 22053 was amended to delete the exemption from 22480.* (Stats. 1984, ch. 890, § 7, p. 2971.)

[10]Section 22480 reads in pertinent part: "If the loan contract is paid in full by cash, a new loan, refinancing or otherwise, the borrower shall receive a rebate of that portion of the precomputed charge which is the difference between the total precomputed charge and the charges at the contract rate computed in accordance with the provisions of Section 22454 or 22454.1."

Section 22454 dictates the method of computing charges, and section 22454.1 allows licensees to contract at a single annual rate. Section 22454 in 1981 (Stats. 1968, ch. 864, § 1, p. 1645) read in pertinent part: "Except as provided in Article 3 (commencing with Section 22480) of this Chapter, all charges on loans made under this division shall be computed and paid only as a percentage per month of the unpaid principal balance or portions thereof, and shall be so expressed in every obligation signed by the borrower."

Section 22454.1, in 1981 and presently, reads in pertinent part:

"Notwithstanding Section 22454, a licensee may contract for and receive charges on the unpaid principal balance at a single annual percentage rate applied on the basis of the number of days actually elapsed, which annual rate would produce a finance charge at the maturity of the contract not in excess of the finance charge resulting from the application of the graduated rates specified in Section 22451 when the loan is paid according to its terms and charges are computed on the basis that a month is any period of 30 consecutive days as provided in Section 22454 . . . ."

The present section 22480 is cited above. It includes the amendments adopted in 1981, which do not affect this decision. (Stats. 1981, ch. 144, § 24, pp. 939-941.) The 1979 amendment applies to Draper's loan. It explicitly stated it was to apply to contracts entered on or after January 1, 1980. (Stats. 1979, ch. 466, §§ 3 and 5, pp. 1622-1624.)

Financial Code section 22482 added a "new section to the Personal Property Brokers Law which requires that when a precomputed, *noncommercial* loan of an original amount of $10,000 or more is prepaid in full . . . . [T]he borrower shall receive a credit equal to the difference between the total precomputed charge (rule of 78 method) and the charges at the contract rate computed by the actuarial method." (Finance, Insurance, and Commerce Committee summary of Assem. Bill No. 627 as amended Apr. 6, 1981, p. 3; Summary of Assem. Bill No. 627 as amended in Assem., Apr. 1981. Assem. Bill No. 627 was enacted in 1981 [Stats. 1981, ch. 144, § 1, p. 929 et seq.]; it amended among others Fin. Code, § 22480 and added § 22482.)

In enacting Financial Code section 22482, it was acknowledged that at that time, the existing personal property brokers laws did not apply to loans of a principal amount of $10,000 or more or to commercial loans and that this new statute would force the use of the actuarial method when these loans were prepaid. (June 12, 1981 Sum. by Sen. Democratic Caucus of Assem. Bill No. 627, as amended June 8, 1981.) This statute was added to the statutory scheme in 1981, and by application of law would take effect in 1982; thus section 22482 was effective after Draper's loan was executed. (Stats. 1981, ch. 144, § 25, pp. 941-942.)

Financial Code section 22481, entitled "Precomputed loans; Limitations on licensees," presently provides that "With respect to *precomputed loans*, licensees shall be subject only to, comply only with and derive authority only from Sections *22480* and *22482*, notwithstanding any other provision of law which is not within this division." (Italics added.)

Thus, when precomputed loans given by personal property brokers are repaid, Financial Code sections 22480 and 22482 control.

As stated above, at the time of Draper's loans, Financial Code section 22053 exempted loans with a principal amount of over $10,000 from the requirements of Financial Code section 22480. Thus, American Funding was not required to comply with the limitations of section 22480. (In 1984, Fin. Code, § 22053 was amended to delete the exemption. See fn. 9, *ante*.)

Additionally, Financial Code section 22482 was not effective until after Draper's loan was executed and was not included within Financial Code section 22481 until 1982, also after Draper's loan was executed. (Stats. 1982, ch. 1009, § 5, pp. 3698-3699.)[11] Thus, section 22482 also cannot be applied to Draper's loan.

---

[11]Financial Code section 22482 was amended in 1984 to apply to noncommercial loans of $5,000 or more. The 1984 amendment also added the following statement: "This section does not apply to charges paid by the borrower . . . such as charges . . . agreed to be paid by the borrower upon prepayment of a loan secured by a lien upon real property." (Stats. 1984, ch. 890, § 15, p. 2977.) This addition to the statutory scheme allows a personal property broker to charge a prepayment penalty. This statement was added to the statute after the

According to the personal property broker laws, therefore, American Funding was free to utilize a precomputed loan and free to use the Rule of 78's.

We recognize the apparent harsh result in this matter since subsequent to Draper's loan legislative enactments herein explained would have prohibited American Funding from using the Rule of 78's to compute the amount Draper owed when he desired to prepay his loan. However, the regulation of prepayment penalties is an area which is properly addressed by the Legislature. (*Gutzi Associates* v. *Switzer* (1989) 215 Cal.App.3d 1636, 1646 [264 Cal.Rptr. 538].) We must interpret the laws which were applicable to Draper's loan.

The judgment is reversed. Parties are to bear their own costs on appeal.

Boren, J., and Grignon, J., concurred.

---

present loan was negotiated. Charges are defined in the Financial Code in sections 22003, 22004 and 22005 to include, among other items, interest, fees, bonuses, and commissions. This statement does not, however, allow the use of the Rule of 78's if it would otherwise be prohibited if the loan is secured by real property. Other Financial Code sections specifically deal with precomputed loans and the allowable method of computation upon prepayment. It would not be logical to assume this addition to section 22482 would allow the Rule of 78's if agreed upon by the consumer. Rather, read in the manner in which it was intended, this would allow a lender to charge a borrower for the right to prepay the loan.